SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JANE DOE,

                         *Plaintiff*,

      v.

TELEMUNDO NETWORK GROUP LLC;
NBCUNIVERSAL MEDIA, LLC;
COMCAST HOLDINGS CORPORATION;
ACUN MEDIA PACIFIC LLC;
FRANCISCO SUAREZ; and
RAFAEL ORTEGA,

                       *Defendants*.

Index No.

**AMENDED SUMMONS**

To the above-named Defendants:

     **YOU ARE HEREBY SUMMONED** to answer the amended complaint in the action and to serve a copy of your answer, or, if the amended complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons (exclusive of the day of service), or within 30 days after the service is complete if this summons is not personally delivered to you within the state of.

     **YOU ARE HEREBY NOTIFIED THAT** should you fail to appear or answer, a judgment will be entered against you by default for the relief demanded in the amended complaint. Plaintiff designates NEW YORK COUNTY as the place of trial. The basis of venue is the Plaintiff's residence.

Dated: New York, NY
       September 6, 2022           EISENBERG & BAUM, LLP

                                By: /s/ Eric M. Baum, Esq.
                                Eric M. Baum, Esq.
                                Adriana Alcalde, Esq.
                                24 Union Square East, Penthouse
                                New York, NY 10003

Case 1:22-cv-07665   Document 1-1   Filed 09/08/22   Page 2 of 26

Tel: (212) 353-8700
Fax: (917) 591-2875
ebaum@eandblaw.com
aalcalde@eandblaw.com

TO:     Telemundo Network Group LLC
        C/o Enterprise Corporate Services LLC
        1201 N. Market Street, Suite 1000
        Wilmington, DE 19801

        NBCUniversal Media, LLC
        C/o Enterprise Corporate Services LLC
        1201 N. Market Street, Suite 1000
        Wilmington, DE 19801

        Comcast Holdings Corporation
        C/o CT Corporation System
        1200 South Pine Island Road
        Plantation, FL 33324

        Acun Media Pacific LLC
        7190 W Sunset Blvd., Suite 16
        Los Angeles, CA 90046

        Francisco Suarez
        1221 Avenue of the Americas
        New York, NY 10020

        Rafael Ortega
        1221 Avenue of the Americas
        New York, NY 10020

=2=

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

JANE DOE,

*Plaintiff*,

v.

TELEMUNDO NETWORK GROUP LLC;
NBCUNIVERSAL MEDIA, LLC;
COMCAST HOLDINGS CORPORATION;
ACUN MEDIA PACIFIC LLC;
FRANCISCO SUAREZ; and
RAFAEL ORTEGA,

*Defendants*.

---

Index No.

**AMENDED COMPLAINT**

Plaintiff JANE DOE ("Plaintiff"), by and through her attorneys, Eisenberg & Baum, LLP, hereby states her Amended Complaint against Defendants Telemundo Network Group LLC; NBCUniversal Media, LLC; Comcast Holdings Corporation; Acun Media Pacific LLC; Francisco "Cisco" Suarez; and Rafael "Coco" Ortega ("Defendants") and alleges as follows based upon personal knowledge and information and belief:

## PRELIMINARY  STATEMENT

1.      JANE DOE, a respected athlete and television personality, was hospitalized while filming the sports-themed Spanish-language reality show "Exatlón Estados Unidos," and Defendants allowed a producer of the show to take Plaintiff's phone, have sole access to her in her hospital room, and prevent her from communicating with anyone else or leave the hospital. Soon thereafter, that same producer lured Ms. JANE DOE to a purported business meeting and raped her. Despite being a popular contestant, Plaintiff was not invited back to further seasons of the show after these traumatic events.

2.      These events were devastating to Plaintiff and resulted in severe psychological and

emotional distress that continue to this day. Not only did Defendants knowingly and wrongfully confine Plaintiff to a hospital room with no means of communication and later allow her to be sexually assaulted by one of her confiners; Defendants also terminated her from the show for being a victim of these acts. Defendants have taken her livelihood, self-confidence, and dignity as a result.

## **PARTIES**

3.      Plaintiff JANE DOE is an individual residing in Mexico City, Mexico. Ms. JANE DOE is an athlete who appeared on Season 3 of Defendants' show "Exatlón Estados Unidos."

4.      Upon information and belief, Defendant Telemundo Network Group LLC is a Delaware limited liability company that produces the show "Exatlón Estados Unidos" under the ownership, control, and supervision of Defendants NBCUniversal Media, LLC and Comcast Holdings Corporation, and with a registered address for service at c/o Enterprise Corporate Services LLC, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801 and a principal place of business at 1221 Avenue of the Americas, New York, NY, 10020.

5.      Upon information and belief, Defendant NBCUniversal Media, LLC is a Delaware limited liability company with a registered address for service at c/o Enterprise Corporate Services LLC, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801 and a principal place of business at 30 Rockefeller Plaza New York, NY 10112. Upon information and belief, Defendant NBCUniversal Media, LLC is a parent company of Defendant Telemundo Network Group, LLC and finances and exerts supervisory control over the shows it produces, including "Exatlón Estados Unidos."

6.      Upon information and belief, Defendant Comcast Holdings Corporation is a Pennsylvania for-profit corporation that is a multinational telecommunications conglomerate and

2

the parent company of Defendant NBCUniversal Media, LLC.

7.      Upon information and belief, Defendant Acun Media Pacific LLC is a California limited liability company located at 7190 W Sunset Blvd, Suite 16, Los Angeles 90046, and was the production company for the show "Exatlón Estados Unidos" during the season that Plaintiff was a contestant.

8.      Upon information and belief, Defendant Francisco "Cisco" Suarez is an individual who is employed by the corporate Defendants as a producer of the show "Exatlón Estados Unidos" during the season that Plaintiff was a contestant.

9.      Upon information and belief, Defendant Rafael "Coco" Ortega is an individual who is employed by the corporate Defendants as a producer of the show "Exatlón Estados Unidos" during the season that Plaintiff was a contestant.

**JURISDICTION AND VENUE**

10.      This Court has personal jurisdiction over Defendants pursuant to CPLR 301 and 302, as Defendants Telemundo Network Group, LLC, NBCUniversal Media, LLC, and Comcast Holdings Corporation (the "Corporate Defendants") conduct business and use real property in New York, and because Defendants Telemundo Network Group, LLC and NBCUniversal Media, LLC have a principal place of business in New York.

11.      Venue is properly located in New York County pursuant to CPLR 503, as the county in which Defendants Telemundo Network Group, LLC and NBCUniversal Media, LLC reside.

12.      This action falls within one or more of the exceptions set forth in CPLR 1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or

3

intentionally, and in concert). This action also falls within one or more of the exceptions set forth in CPLR 1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein. The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## **STATEMENT OF FACTS**

13.    "Exatlón Estados Unidos" is a popular Spanish-language reality sports competition television show where two teams of contestants compete against each other in various physical and athletic challenges, particularly on custom-built "parkour" courses.[1] "Exatlón Estados Unidos" is the American version of the show "Exatlón."

14.    In each season of the show, celebrities and professional athletes make up one team, while the other team consists of ordinary people from all walks of life.[2]

15.    Plaintiff JANE DOE is a professional athlete who appeared on a season of "Exatlón Estados Unidos" in 2019.

16.    In or around August through September 2019, when Ms. JANE DOE was injured during the production of the show and became gravely ill, she was treated horribly by Defendants' staff and producers, who forbade her from calling her home and speaking to any friends or family about what was happening to her while she was in the intensive care unit. They also refused to allow her to leave.

17.    While confined to the hospital, Ms. JANE DOE was not permitted to have any visitors except for Defendant Ortega, a producer of the show, who would frequently visit her for

---

[1] *See* https://www.exatlon.tv/estadosunidos.
[2] *See* https://www.exatlon.tv/estadosunidos.

INDEX NO. 157058/2022

Case 1:22-cv-07665  Document 1-1  Filed 09/08/22  Page 7 of 26

RECEIVED NYSCEF: 09/07/2022

no apparent reason. Defendants confiscated Ms. JANE DOE's personal phone and there was no other phone in her hospital room. Defendant Ortega's constant visits and Defendants' isolation of Plaintiff from any other visitors or communications made Ms. JANE DOE feel extremely uncomfortable and unsafe.

18.     Mr. Ortega used his power as producer of the show to gain constant and unrestricted access to Ms. JANE DOE and control all of her communication with the outside world. As Plaintiff would later come to realize, he did this out of a sexual interest in Ms. JANE DOE and a desire to isolate and manipulate her.

19.     In addition to confiscating her phone while she was still in the intensive care unit, Mr. Ortega finally allowed Ms. JANE DOE just one phone call to her mother on Mr. Ortega's phone and only for a few minutes, while he stood over her and told her to lie to her mother that everything was fine. Mr. Ortega only allowed this because the fact she was injured on the show was going to be aired and Defendants could not continue to falsely imprison her without access to communication any longer.

20.     On December 28, 2019, a few months after Ms. JANE DOE's release from the hospital, Defendant Ortega invited Plaintiff to a business meeting at the Hyatt Regency in Andares, Guadalajara, Mexico to discuss the possibility of her returning for another season of the show. Two other contestants from the show also attended this corporate meeting at the hotel's restaurant and bar.

21.     Despite knowing of Defendant Ortega's propensity for sexual misconduct and his unusual interest in Ms. JANE DOE as demonstrated during her hospital visit, Defendants authorized and condoned this purported business meeting.

22.     Because Ms. JANE DOE was unfamiliar with the nature of showbusiness and had

5

never had a meeting with superiors in a hotel, she did not know what to expect and felt compelled to meet with Mr. Ortega, believing this meeting was for business purposes only and was necessary to secure a casting on subsequent seasons of the show. Ms. JANE DOE also believed that Mr. Ortega was essentially the "voice" of the show given that he was the only person that Defendants allowed her to communicate with in the hospital.

23.    Ms. JANE DOE's intention was to return home after the meeting or stay with one of the other contestants. But after the other contestants left, Ms. JANE DOE was left with Mr. Ortega and a male friend of his.

24.    When Ms. JANE DOE said she was going to get her own hotel room for the night and Mr. Ortega insisted she stay at his hotel room instead.

25.    To convince her to stay, Mr. Ortega assured Ms. JANE DOE that he would sleep in the other bed or on the floor and would not touch her.

26.    Ms. JANE DOE acquiesced because Mr. Ortega had decision-making power in the production of a show that she had potential to continue to be involved in. Ms. JANE DOE, like other contestants, understood that alienating him would result in her being disadvantaged or blacklisted from the show. From Ms. JANE DOE's perspective, her relationship with Mr. Ortega had been purely professional until this point.

27.    When they got to Mr. Ortega's room, Ms. JANE DOE fell asleep. She later woke up to Mr. Ortega on top of her while touching her breasts and saying that "he liked her very much" and that "he would not do anything to hurt her or disrespect her" as he was continuing to press himself on her and put the full weight of his body on hers.

28.    Ms. JANE DOE asserted herself and said "No! You said you wouldn't try anything!" but he forced himself on her against her will. Ms. JANE DOE was suddenly awakened,

in a state of shock, immobilized by Mr. Ortega's body weight and was unable to fight him off. Accordingly, Mr. Ortega proceeded to rape her.

29.     After this horrific event, Ms. JANE DOE felt coerced to maintain appearances of friendship with Mr. Ortega as she feared that complaining to anyone in the Defendants' companies would provoke Mr. Ortega to disadvantage and eradicate her casting and opportunities with Telemundo.

30.     Upon information and belief, Mr. Ortega raped Ms. JANE DOE knowingly, and using his power over her professional opportunities. Mr. Ortega used his power over Ms. JANE DOE to lure her to a corporate hotel room by representing that the meeting was for a legitimate business purpose, but which was actually a pretext for forced sexual assault.

31.     Given (1) Mr. Ortega's position of power and influence and (2) a known pervasive pattern and practice of sexist conduct among Defendants that included turning a blind eye to these types of accusations and Defendant Ortega's sexual misconduct, Ms. JANE DOE knew that any complaint would likely backfire and she might not be able to continue appearing on the show. This potential loss of livelihood caused Ms. JANE DOE a severe loss of self-esteem and feelings of helplessness and dread. Indeed, despite what Ms. JANE DOE thought was a productive business meeting (before she was raped), she was not invited back for subsequent seasons of the show.

32.     In addition to a general culture of sexual misconduct and indifference to the same among Defendants and their producers, Defendants knew that Mr. Ortega frequently exhibited predatory sexual behavior to show contestants and other women. Ms. JANE DOE also knew that Mr. Ortega could be very controlling. Mr. Ortega manipulated Ms. JANE DOE and ordered her to erase all text messages between them to discard any evidence that he had lured her to his hotel that night, and raped her. For example, Mr. Ortega told Ms. JANE DOE that "no one can find out about

7

this . . . erase the texts right now." He intentionally manipulated Ms. JANE DOE into compliance by promising that he would guarantee that she would be on the next season of the show. Left without a choice, she acquiesced.

33.    To make matters worse, Ms. JANE DOE had to repeatedly interact with Defendant Ortega after the incident because Defendants made him responsible for conducting "confessional" interviews of contestants like Ms. JANE DOE that are typical of realty competition shows like "Exatlón Estados Unidos" to provide narration, exposition, and commentary, despite knowing of his propensity for predatory sexual misconduct. This constant interaction with her abuser significantly exacerbated Ms. JANE DOE'S emotional injuries and trauma.

34.    Upon information and belief, there was a widespread pattern of sexism, sexual abuse, and sexual harassment by Defendant Ortega and Defendants' other producers and executive staff of the show.

35.    The only other supervisor on staff was the show's senior producer, Defendant Francisco "Cisco" Suarez, who was unapproachable and had a reputation of supporting the misogynistic culture that allowed sexual harassment and abuse in the workplace. Hence, Ms. JANE DOE felt fear and discomfort about asking him for any help.

36.    Despite much fanfare during her season, Plaintiff was not invited back for additional seasons of the show because Defendants wanted to cover up Defendant Ortega's sexual assault and their treatment of her while she was in the hospital.

37.    As a result of Defendants' actions and inactions, Ms. JANE DOE suffered severe psychological and emotional distress and humiliation. Ms. JANE DOE was raped by a person with control over her livelihood; a producer of the show she was currently filming. Ms. JANE DOE knew that Defendants were aware of Ortega's conduct and would nevertheless protect Defendant

Ortega, and that Ms. JANE DOE could not complain without losing her source of income. This distress was naturally exacerbated by Defendant Ortega's continued attempts to contact Ms. JANE DOE after he sexually assaulted her. Ms. JANE DOE still has nightmares of her stay at the hospital and Defendants' treatment of her there, not to mention Defendants' condonement of the horrific sexual abuse and rape she later suffered at Defendant Ortega's hands.

**FIRST CAUSE OF ACTION**
(Violation of 18 U.S.C. § 1591 against Defendant Ortega)

38.    Plaintiff repeats, reiterates and re-alleges each and every allegation set in detail above as if set forth more fully and at length herein.

39.    The Trafficking Victims Protection Act ("TVPA") creates a civil remedy by victims against perpetrators and others who benefitted financially from participation in a sex trafficking venture. *See* 18 U.S.C. § 1595. A TVPA claim must plead that the defendant "knowingly . . . benefits, financially or by receiving anything of value, from participation in a [sex trafficking venture,] while knowing . . . that means of force, threats of force, fraud [or] coercion . . . will be used to cause [a] person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(2). In addition to traditional sex trafficking ventures such as forced prostitution, the TVPA equally applies in simpler and less sensational situations to "defendants who have lured women, under false pretenses and with lucrative promises, for sexual purposes." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 516 n.5 (S.D.N.Y. 2018).[3]

40.    Mr. Ortega frequently traveled to different states for Defendants and for "Exatlón Estados Unidos" and had Plaintiff travel to multiple locations for work relating to the show,

---

[3] Indeed, "Congress noted that 'trafficking in persons is not limited to the sex industry,' and that 'traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models.'" *Id.* at 514 (citing Pub. L. No. 106-386 § 102, 114 Stat. 1488 (2000)).

9

including having her sign her contract for the show in Miami, Florida. Unbeknownst to Plaintiff, Mr. Ortega actually intended to sexually assault Plaintiff during one such occasion, using the pretext of the show and of a business meeting regarding Plaintiff's continued appearance on the show to force Plaintiff to perform a commercial sex act.

41.     Mr. Ortega knew that he would use promises of continued participation on the show and continued work with Defendants in order to create a pretext for him to meet with Plaintiff for business-related purposes and used fraud, physical force or coercion to force a sexual encounter without Plaintiff's consent.

42.     Mr. Ortega, through his position with Defendants, arranged business meetings with Plaintiff to lure her into a purported work-related environment that turned into a sexual assault.

43.     Mr. Ortega knew that a continued role on the show and his potential influence on Plaintiff's career in the entertainment industry was something of significant and commercial value to Plaintiff, which he used to perform the sexual assault described above.

44.     Mr. Ortega used his power over Plaintiff as described above to lure Plaintiff to his hotel room by representing that the meeting was for a legitimate business purpose, but which was actually a pretext for the forced sexual assault described above. Plaintiff felt compelled to meet with him because of Mr. Ortega's power over her.

45.     Mr. Ortega traveled in interstate and foreign commerce, knowingly recruiting or enticing Plaintiff, offering her something of value such as continued appearances on the show he and Defendants produced, knowing that he would use this offer as a means to coerce her to have a private "business" meeting with Plaintiff and then use fraud, intimidation, force and/or coercion into a forced sexual encounter without her consent.

46.     Thus, Mr. Ortega knowingly affected interstate commerce by recruiting, enticing,

transporting, and soliciting Plaintiff, knowing that he intended to and did perform a commercial sex act on her without Plaintiff's consent.

47.     As a result, Plaintiff experienced injury in the form of severe emotional pain and suffering, emotional distress and humiliation.

48.     For the reasons alleged above, Plaintiff seeks compensatory and punitive damages at an amount to be determined by trial, and an award of attorneys' fees, costs, and disbursements.

## SECOND CAUSE OF ACTION
(Violation of 18 U.S.C. § 1591 against Corporate Defendants and Defendant Suarez)

49.     Plaintiff repeats, reiterates and re-alleges each and every allegation set in detail above as if set forth more fully and at length herein.

50.     The Corporate Defendants and Defendant Suarez knowingly participated in Mr. Ortega's venture in violation of 18 U.S.C. § 1591 by knowingly benefiting from, facilitating, and receiving value for, the venture in which Mr. Ortega traveled in foreign and interstate commerce, with knowing, or in reckless disregard of the facts, that Mr. Ortega would defraud, force and/or coerce sexual encounters from women seeking to do business with the Corporate Defendants.

51.     Mr. Ortega and employees of the Corporate Defendants, acting in the scope and course of their employment as Mr. Ortega had directed, coordinated to form a venture that coerced, transported, and harbored Plaintiff, either with knowledge or in reckless disregard for the fact that Mr. Ortega would use threats, means of force, and coercion to force Plaintiff into a commercial sex act.

52.     The Corporate Defendants knew or were in reckless disregard of the fact that it was an established pattern and practice of Defendant Ortega to travel in interstate and foreign commerce to lure females such as Plaintiff into fraudulent, forced, or coerced pretextual business meetings that, unbeknownst to Plaintiff, would lead to forced sexual acts.

11

53.     Employees of the Corporate Defendants, including Defendant Suarez, knew from observations of Mr. Ortega that he was sexually aggressive.

54.     Despite this knowledge, the Corporate Defendants continued to pay for and facilitate Mr. Ortega's interstate and foreign trips while knowing or recklessly disregarding the fact that he would encounter aspiring women seeking to do business with the Corporate Defendants and seek to coerce, defraud, and/or force sexual activity in the guise of legitimate production work.

55.     As a result, Plaintiff experienced injury in the form of severe emotional pain and suffering, emotional distress and humiliation.

56.     For the reasons alleged above, Plaintiff seeks compensatory and punitive damages at an amount to be determined by trial, and an award of attorneys' fees, costs, and disbursements.

### THIRD CAUSE OF ACTION
(Violation of the New York Human Rights Law against all Defendants and individually against Defendant Ortega)

57.     Plaintiff repeats, reiterates and re-alleges each and every allegation set in detail above as if set forth more fully and at length herein.

58.     Section 296.1(a) of the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq., prohibits sexual harassment in employment. Defendants were at all relevant times Plaintiff's employers within the meaning of the NYHRL.

59.     Plaintiff had a right to retain her employment free of *quid pro quo* sexual harassment and a hostile work environment.

60.     Nevertheless, Defendants condoned, facilitated, allowed, and created a hostile and intolerable work environment for Plaintiff based on sexual harassment through their conduct and through the *quid pro quo* sexual conduct of Defendant Ortega, of which Defendants were well aware.

61.     Moreover, as alleged above, Defendant Ortega, with the actual and/or constructive knowledge of the other Defendants, including his employers, implicitly and effective made Plaintiff's endurance of sexual conduct a condition of her employment and continued appearance on "Exatlón Estados Unidos."

62.     This harassment affected the terms and conditions of Plaintiff's work and status as a contestant on the show. Plaintiff expressed her objection to being raped and harassed by Defendant Ortega and would not subject herself to further harassment. As a result, Plaintiff was not invited back for additional seasons of the show.

63.     Throughout the course of Defendant Ortega's employment, the Corporate Defendants and their agents and employees, including Defendant Suarez, knew or should have known of his propensity, pattern, and practice of sexual harassment, misconduct, and/or violence, but did not take any action against him and ignored his conduct. Accordingly, all Defendants are liable for Plaintiff's sexual harassment as Plaintiff's employers.

64.     As a direct and proximate result of Defendant Ortega's sexual harassment, Plaintiff suffered bodily injury and extreme emotional distress.

65.     Defendants' actions and inactions were taken under circumstances giving rise to an inference of discrimination.

66.     Defendants' actions and inactions amounted to willful or wanton negligence or recklessness, or at least a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard of Plaintiff's rights.

67.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences, including not being invited back to subsequent seasons of the show and subsequently being caused to suffer lost past and future wages,

professional opportunities, and other valuable benefits and emoluments of employment as well as being forced to endure severe emotional pain and trauma.

68.    For the reasons alleged above, Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages at an amount to be determined by trial, and an award of attorneys' fees, costs, and disbursements.

## FOURTH CAUSE OF ACTION
(Sexual Assault and Battery: Rape against all Defendants and individually against Defendant Ortega)

69.    Plaintiff repeats, reiterates and re-alleges each and every allegation set in detail above as if set forth more fully and at length herein.

70.    Defendant Ortega inflicted rape and unwanted and violent sexually-oriented touching and striking upon Plaintiff and/or placed her in immediate fear and apprehension of receiving such attacks.

71.    Defendant Ortega intentionally raped, assaulted and/or battered Plaintiff, causing her to sustain physical injury and harm and humiliation, shame, fear, anxiety, and extreme emotional distress.

72.    As a direct and proximate result, Plaintiff suffered bodily injury and extreme emotional trauma.

73.    The Corporate Defendants and Defendant Suarez knew or should have known of Defendant Ortega's propensity for sexual misconduct but still allowed him to conduct pretextual business meetings with female show contestants where he committed the unwanted sexual act against Plaintiff described above.

74.    All civil claims or causes of action brought by Plaintiff for physical, psychological or other injury or condition suffered by such person as a result of conduct alleged here "may be

brought against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of the said conduct, within twenty years." CPLR 213-C.

75.     For the reasons alleged above, Plaintiff seeks compensatory and punitive damages at an amount to be determined by trial, and an award of attorneys' fees, costs, and disbursements.

## FIFTH CAUSE OF ACTION
(False Imprisonment against all Defendants and individually against Defendant Ortega)

76.     Plaintiff repeats, reiterates and re-alleges each and every allegation set in detail above as if set forth more fully and at length herein.

77.     To maintain a cause of action for false imprisonment, a plaintiff must plead that "(1) defendant intended to confine them, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent, and (4) the confinement was not otherwise privileged." *Arrington v. Liz Claiborne, Inc.*, 260 A.D.2d 267, 267 (1st Dep't 1999). It is Defendants' burden to show that a confinement was "privileged." *Ferris v. Millman*, 17 Misc. 3d 898, 902 (Sup. Ct. Kings Cty. Sept. 7, 2007) (citing *Hollender v Trump Vil. Coop.*, 58 N.Y.2d 420, 425 (1983)).

78.     While Plaintiff was in the hospital after being injured while filming Defendants' show, Defendants would not allow her to leave the hospital, intending to confine her there.

79.     Upon information and belief, Defendants intended to confine Plaintiff there so that she would not divulge the injury she sustained while working on Defendants' show. Upon information and belief, Defendant Ortega also intended to confine Plaintiff to further exert control over her through intimidation and manipulation.

80.     Defendants also took away Plaintiff's phone and would not allow her to contact anyone without their permission.

81.     Plaintiff was at all times conscious and aware of this confinement but never consented to it.

15

82.    As a direct and proximate result, Plaintiff suffered extreme emotional trauma and distress in the form of humiliation, shame, fear, and anxiety.

83.    For the reasons alleged above, Plaintiff seeks compensatory and punitive damages at an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

## SIXTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress against the Corporate Defendants and individually against Defendant Ortega)

84.    Plaintiff repeats, reiterates and re-alleges each and every allegation set in detail above as if set forth more fully and at length herein.

85.    To maintain a cause of action for intentional infliction of emotional distress, a plaintiff must plead "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Scollar v. City of New York*, 160 A.D.3d 140, 145–46 (1st Dep't 2018) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y. 2d 115, 121 (1993)).

86.    Defendants' intentional confinement of Plaintiff to a hospital and refusal to allow her to leave or contact anyone about her serious injuries (or otherwise), and Defendant Ortega's unwanted and forcible sexual assault against Plaintiff while making her face and interact with him for repeated interviews on the show he was producing, constitute extreme and outrageous conduct that is utterly reprehensible and cruel.

87.    This conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

88.    Defendants' conduct described above was done with either an intent to cause, or disregard of a substantial probability of causing, severe emotional distress to Plaintiff.

16

89.     As a direct and proximate result, Plaintiff suffered bodily harm and severe emotional distress in the form of humiliation, shame, fear, and anxiety. Plaintiff has nightmares about Defendants' treatment of her at the hospital and Defendant Ortega's conduct to this day.

90.     For the reasons alleged above, Plaintiff seeks compensatory and punitive damages at an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

**SEVENTH CAUSE OF ACTION**
(Negligent Hiring, Supervision, or Retention against the Corporate Defendants)

91.     Under a claim for negligent supervision or retention under New York law, an employer may be liable "for the tort of an employee against a third party when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." *Detone v. Bullit Courier Service, Inc.*, 140 A.D.2d 278, 279 (1st Dep't 1988).

92.     At all times relevant, a servant-master relationship existed between the Corporate Defendants and Defendant Ortega such that Defendants controlled the means and manner of the performance of Defendant Ortega's job duties, including his conduct toward contestants of shows that he produces.

93.     During the course of Defendant Ortega's employment, Defendants knew or should have known of his propensity, pattern, and practice of sexual harassment, misconduct, and/or violence, but did not take any action against him.

94.     Based upon what they knew or should have known about Defendant Ortega, the Corporate Defendants had a duty to investigate his conduct, which would have revealed his unsuitability for employment, and to discharge him.

95.     Given actual and/or constructive knowledge of Defendant Ortega's propensity for sexual misconduct, the Corporate Defendants acted unreasonably in retaining him as an employee

17

at all relevant times.

96.     Defendants also knew or should have known of Defendant Ortega's specific sexual interest in Plaintiff prior to his sexual assault. Defendants would not allow her to leave and communicate with anyone else while at the hospital, but allowed Defendant Ortega to use his power as producer of the show to gain constant and unrestricted access to Plaintiff.

97.     Based upon what they knew or should have known about Defendant Ortega, the Corporate Defendants had a duty to control his conduct during all times that he was acting, or otherwise empowered to act, as a producer with power to set up business meetings with any contestant he desired.

98.     At all times relevant, a servant-master relationship existed between the Corporate Defendants and Defendant Ortega that required the Corporate Defendants to act with reasonable care in the supervision of Defendant Ortega's performance of his job duties, including properly supervising Defendant Ortega's interactions with contestants of the show.

99.     At all times relevant, a servant-master relationship existed between the Corporate Defendants and Defendant Ortega that required the Corporate Defendants to act with reasonable care in its retention of Defendant Ortega based upon what they knew or should have known about his unfitness for employment, including a duty to take further actions such as investigation or discharge.

100.    At all times relevant, the Corporate Defendants' own negligence as Defendant Ortega's employer created the risk of harm to Plaintiff and, as a result, the Corporate Defendants had a common-law duty to make a reasonable effort to avoid further harm to others, including Plaintiff.

101.    At all times relevant, Defendant Ortega's sexual assaults were committed outside

of the scope and course of employment because he was not employed to sexually assault contestants and individuals appearing on the shows he produces.

102. At all times relevant, the Corporate Defendants had a duty to protect third parties, including but not limited to Plaintiff, who were within the foreseeable orbit of risk of harm created by Defendant Ortega because that risk was not readily discoverable by Plaintiff before she was sexually assaulted.

103. At all times relevant, the Corporate Defendants knew, or in the exercise of reasonable care, should have known that Defendant Ortega was unfit, dangerous, and a threat to the health, safety, and welfare of those he was allowed to exert power over in his position, including Plaintiff.

104. As a result of the failure to act with reasonable care toward Plaintiff, the Corporate Defendants breached one or more of the duties owed to Plaintiff and failed to protect her from the sexual assault committed by Ojeda while he was an agent and employee of the Corporate Defendants and authorized by them to conduct pretextual business meetings at locations in the possession and financial and supervisory control of the Corporate Defendants.

105. The Corporate Defendants knew that Defendant Ortega was conducting a business meeting that resulted in him raping Plaintiff and paid for and facilitated his use of the hotel to commit the act after meeting with Plaintiff and multiple other contestants of the show for a purported business meeting.

106. As a direct and proximate result of the Corporate Defendants' failure to act with reasonable care in the discharge of one or more of their duties to Plaintiff, Plaintiff suffered bodily harm and severe and permanent psychological and emotional injuries, shame, and humiliation. These injuries are permanent and ongoing in nature. The Corporate Defendants' actions and

inactions exacerbated and aggravated Plaintiff's mental anguish, showing a callous disregard for her safety and well-being.

107.    For the reasons alleged above, Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

### EIGHTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress against all Defendants and individually against Defendant Ortega)

108.    Plaintiff repeats, reiterates and re-alleges each and every allegation set in detail above as if set forth more fully and at length herein.

109.    Under a claim for negligent infliction of emotional distress, "[w]hen there is a duty owed by defendant to plaintiff, breach of that duty resulting directly in emotional harm is compensable even though no physical injury occurred" *Kennedy v McKesson Co.*, 58 NY2d 500, 504 (1983).

110.    Defendants' conduct, including Defendant Ortega's sexual assault of Plaintiff, Defendants' negligent retention and supervision of Defendant Ortega, and Defendants' tortious confinement of Plaintiff described above, negligently caused emotional distress to Plaintiff.

111.    At all times relevant, a servant-master relationship existed between the Corporate Defendants and Defendant Ortega such that the Corporate Defendants controlled the means and manner of the performance of Defendant Ortega's job duties, including his conduct toward contestants of shows that he produces.

112.    During the course of Defendant Ortega's employment, Defendants knew or should have known of his propensity, pattern, and practice of sexual harassment, misconduct, and/or violence. Based upon what they knew or should have known about Defendant Ortega, Defendants had a duty to Plaintiff and other show contestants to investigate and control his conduct during all

times that he was acting, or otherwise empowered to act, as a producer with power to set up business meetings with any contestant he desired.

113.    As set forth above, at all times relevant, the Corporate Defendants' own negligence as Defendant Ortega's employers created a risk of harm to Plaintiff and, as a result, the Corporate Defendants had a common-law duty to make a reasonable effort to avoid further harm to others, including Plaintiff.

114.    Defendants also owed a duty of care to Plaintiff as a contestant on a show Defendants were producing, which was breached when Defendants refused to allow Plaintiff to leave the hospital or communicate with others while injured, and when Defendants permitted Defendant Ortega to sexually assault Plaintiff.

115.    Defendants could reasonably foresee that these actions would result in the infliction of emotional distress upon Plaintiff. Indeed, Plaintiff suffered severe emotional distress as a result of the breaches of duty described above.

116.    For the reasons alleged above, Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

### NINTH CAUSE OF ACTION
(Violation of N.Y.C. Admin. Code § 10-1101 et seq. against Defendant Ortega)

117.    Plaintiff repeats, reiterates and re-alleges each and every allegation set in detail above as if set forth more fully and at length herein.

118.    The Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code § 10-1101 et seq. provides a civil cause of action for "injur[y] by an individual who commit[ted] a crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104). The term "crime of violence" is defined as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law . . . if the conduct presents a serious risk of

physical injury to another, whether or not those acts actually resulted in criminal charges, prosecution or conviction." N.Y.C. Admin Code § 10-1103. A "crime of violence" under the statute includes rape and sexual assault. *See Breest v. Haggis*, 180 A.D.3d 83, 94 (1st Dep't 2019).

119.    As alleged above, by raping and sexually assaulting Plaintiff, Defendant Ortega committed a "crime of violence" against Plaintiff as defined by the Victims of Gender-Motivated Violence Protection Law.

120.    For the reasons alleged above, Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief against Defendants:

A.    Enter a declaratory judgment stating that Defendants' practices, policies, and procedures subjected Plaintiff to sexual harassment, gender discrimination, and retaliation in violation of the New York Human Rights Law;

B.    Issue an injunction to enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies employees the full and equal enjoyment of the benefits of employment Defendants' companies, and specifically enjoin them:

    i.    to develop, implement, promulgate, and comply with a policy providing for the training of each and every employee and manager in the civil right of employees in the workplace, including but not limited to sexual harassment, gender discrimination, and retaliation;

    ii.    To develop, implement, promulgate, and comply with a policy providing for reporting and investigation of complaints regarding civil rights abuses, including

22

but not limited to sexual harassment and assault; and

    iii. To develop, implement, promulgate, and comply with a policy providing for disciplinary measures to be imposed upon any person found responsible for civil rights abuses, including but not limited to sexual harassment and assault;

C.    Enter judgment against Defendants and an award of damages, including but not limited to compensatory damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre- and post-judgment interest in an amount to be determined at trial by a jury; and

D.    Any further relief as this Court deems just and proper.

Dated: New York, NY
      September 6, 2022

EISENBERG & BAUM, LLP

By:    /s/ Eric M. Baum
       Eric M. Baum, Esq.
       Adriana Alcalde, Esq.
       24 Union Square East, Penthouse
       New York, NY 10003
       (212) 353-8700
       ebaum@eandblaw.com
       aalcalde@eandblaw.com
       *Attorneys for Plaintiff*

# **VERIFICATION**

STATE OF NEW YORK    )
                     ) s.:
COUNTY OF NEW YORK   )

The undersigned, ███████████████████████████████, filing as JANE DOE, shows:

Deponent is ███████████████████████████, filing as JANE DOE, Plaintiff in the above- entitled action. Deponent has read the foregoing Amended Verified Complaint dated September 6, 2022, and states that, to deponent's knowledge, the same is true except as to matters herein stated to be alleged upon information and belief; as to those matters, deponent believes them to be true.

The undersigned affirms that the foregoing statements are true under the penalties of perjury.

Dated: September 07, 2022

███████████████████████████ -

███████████████████████, filing as Jane Doe

STATE OF FLORIDA
COUNTY OF ORANGE

Sworn to and subscribed before me by means of ☐ physical presence or ☑ online notarization, this 7th day of September, 2022, by ██████████████████████████.

*Sandra Burgos*   Digitally signed by Sandra Burgos
                   Date: 2022.09.07 10:15:50 -04'00'
_____
(Signature of Notary Public – State of Florida)

## Sandra Burgos
_____
(Print, Type, or Stamp Commissioned Name of Notary Public)

_____ Personally Known OR
___☑___ Produced Identification
Type of Identification Produced: Mexico Passport