UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                         :

JANE DOE,                                   :

                                    :

                Plaintiff,            :

                                    :                     22 Civ. 7665 (JPC)

            -v-                       :

                                    :                <u>OPINION AND ORDER</u>

TELEMUNDO NETWORK GROUP LLC *et al.*,    :

                                    :

               Defendants.         :

                                    :

-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Plaintiff, "a respected athlete and television personality" proceeding under the pseudonym "Jane Doe," Dkt. 1-1 ("Am. Compl.") ¶ 1, has sued Telemundo Network Group LLC ("Telemundo"), NBCUniversal Media, LLC ("NBC"), and Comcast Holdings Corporation ("Comcast," and, together with Telemundo and NBC, the "Corporate Defendants"), along with Francisco Suarez and Rafael Ortega (the "Individual Defendants"), alleging that she[1] was falsely imprisoned and subsequently raped by Ortega in connection with her appearance on a Spanish-language reality television show for which Suarez and Ortega are producers.  She asserts causes of action for violating the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1591 *et seq.*; unlawful discrimination on the basis of sex under section 296.1(a) of the New York State Human Rights Law ("NYSHRL"); common law claims for sexual assault and battery, false imprisonment, intentional and negligent infliction of emotional distress, and negligent hiring, supervision, and/or retention; and violations of the Victims of Gender-Motivated Violence

---

[1] Although the Amended Complaint does not reveal Plaintiff's name, it does repeatedly refer to Plaintiff as being female.  *See generally* Am. Compl.

Protection Act under the New York City Administrative Code, N.Y.C. Admin. Code §§ 10-1101 *et seq.*

Following removal to federal court in this District, Plaintiff moved to proceed pseudonymously, which Defendants have opposed.  Defendants also have filed an omnibus motion to dismiss each claim either for lack of personal jurisdiction or for failure to state a claim.  For the reasons discussed, Plaintiff's motion to proceed by pseudonym is denied, and Defendants' motion to dismiss is granted in part and denied in part.

## I.  Background

### A.  Facts[2]

Plaintiff is a "respected athlete and television personality."  Am. Compl. ¶ 1; *see also id.* ¶ 15.  In 2019, she was invited to participate on Season 3 of the Spanish-language reality television show "Exatlón Estados Unidos" (the "Show").  *Id.* ¶¶ 1, 3.  The Show involves two teams—one comprised of "celebrities and professional athletes," and another comprised of "ordinary people from all walks of life"—competing against each other in various physical and athletic challenges. *Id.* ¶¶ 13-14.  It is produced by and airs on Telemundo, which is owned by NBC, which itself is owned by Comcast.  *Id.* ¶¶ 4-6.  Ortega and Suarez are both producers on the Show, with Suarez being the "senior producer."  *Id.* ¶¶ 8-9, 35.

---

[2] The following facts are taken from the Amended Complaint and are assumed as true for the purposes of this Opinion and Order.  *See Interpharm, Inc. v. Wells Fargo Bank Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

For the avoidance of doubt, the Court notes explicitly that Plaintiff's allegations about the conduct of Defendants, including her allegations that Ortega committed sexual assault, are not facts that have been found to be true by the Court.  They are only allegations made by Plaintiff and are merely assumed to be true for purposes of resolving the parties' motions in this Opinion and Order.

At some point between August and September 2019, while filming the Show, Plaintiff "was injured . . . and became gravely ill." *Id.* ¶ 16.  She was taken to the hospital and placed in the intensive care unit.  *Id.*  While at the hospital, "Defendants' staff and producers . . . forbade her from calling her home and speaking to any friends or family about what was happening to her," "refused to allow her to leave," confiscated her cellphone, and refused to allow her any visitors except for Ortega, who would "frequently visit her for no apparent reason." *Id.* ¶¶ 16-17.  Ortega's visits made Plaintiff "feel extremely uncomfortable and unsafe." *Id.* ¶ 17.  When the Show was about to air (thus revealing her injury during its filming), Ortega allowed Plaintiff to make a single phone call to her mother, but only for a few minutes, and "he stood over her and told her to lie . . . that everything was fine." *Id.* ¶ 19.

Following her release from the hospital, on December 28, 2019, Ortega invited Plaintiff and two of her fellow contestants to a "business meeting" at the Hyatt Regency hotel in Andares, Guadalajara, Mexico, purportedly to discuss the possibility of returning for another season of the Show.  *Id.* ¶ 20.  Plaintiff felt "compelled" to attend the meeting, "believing this . . . was for business purposes only and was necessary to secure a casting on subsequent seasons of the [S]how." *Id.* ¶ 22.  After the meeting, Plaintiff told Ortega that she planned to secure her own hotel room for the night, but Ortega "insisted she stay in his hotel room instead," promising that he would sleep on the floor or in another bed. *Id.* ¶¶ 24-25.  Plaintiff "acquiesced" because "Ortega had decision-making power in the production of a show that she had potential to continue to be involved in," and she "understood that alienating him would result in her being disadvantaged or blacklisted from the [S]how." *Id.* ¶ 26.

After arriving at Ortega's hotel room, Plaintiff immediately fell asleep. *Id.* ¶ 27.  She then awoke to Ortega lying on top of her "while touching her breasts and saying that 'he liked her very

much' and that 'he would not do anything to her or disrespect her' as he was continuing to press himself on her and put the full weight of his body on hers." *Id.*  Plaintiff screamed, "No! You said you wouldn't try anything!" *Id.* ¶ 28.  But Ortega continued forcing himself on her against her will. *Id.*  He then "proceeded to rape her." *Id.*

Following the rape, Plaintiff "felt coerced to maintain appearances of friendship with Mr. Ortega," fearing that any complaints to the Corporate Defendants "would provoke Mr. Ortega to disadvantage and eradicate her casting and opportunities with Telemundo." *Id.* ¶ 29.  And in particular, Plaintiff felt that she could not turn to Suarez—the Show's senior producer—for help because he was "unapproachable and had a reputation of supporting the misogynistic culture that allowed sexual harassment and abuse in the workplace." *Id.* ¶ 35.  Indeed, Plaintiff alleges that Defendants generally maintained "a culture of sexual misconduct and indifference to the same" and specifically knew that Ortega "frequently exhibited predatory sexual behavior to show contestants and other women." *Id.* ¶ 32.  Furthermore, Plaintiff was forced to continue interacting with Ortega because he was "responsible for conducting 'confessional' interviews of contestants like [Plaintiff] that are typical of real[i]ty competition shows." *Id.* ¶ 33.  Ultimately, "[d]espite much fanfare during her season, Plaintiff was not invited back for additional seasons of the [S]how." *Id.* ¶ 36.  She alleges this was due to Defendants' desire "to cover up" Ortega's actions and her treatment at the hospital.  *Id.*

## B.   Procedural History

Plaintiff initiated this action on August 17, 2022 in the Supreme Court of the State of New York, New York County.   Am. Compl. ¶¶ 1-2.   She then filed the Amended Complaint on

September 7, 2022, correcting a misspelling of Suarez's name. *Id.* ¶ 2.[3]  The Amended Complaint

brings nine causes of action: (1) violation of the TVPA against Ortega (First Cause of Action), *id.*

¶¶ 38-48; (2) violation of the TVPA against the Corporate Defendants and Suarez, *id.* ¶¶ 49-56

(Second Cause of Action); (3) violation of section 296.1(a) of the NYSHRL against all Defendants

(Third Cause of Action), *id.* ¶¶ 57-68; (4) sexual assault and battery in connection with Ortega's

rape of Plaintiff against all Defendants, *id.* ¶¶ 69-75 (Fourth Cause of Action); (5) false

imprisonment against all Defendants, *id.* ¶¶ 76-83 (Fifth Cause of Action); (6) intentional infliction

of emotional distress resulting from Plaintiff's confinement at the hospital against the Corporate

Defendants and Ortega, *id.* ¶¶ 84-90 (Sixth Cause of Action); (7) negligent hiring, supervision, or

retention in connection with Ortega's employment against the Corporate Defendants, *id.* ¶¶ 91-

107 (Seventh Cause of Action); (8) negligent infliction of emotional distress resulting from

Ortega's sexual assault of Plaintiffs and the negligent retention and supervision of Ortega against

all Defendants, *id.* ¶¶ 108-116 (Eighth Cause of Action); and (9) violation of New York City's

Victims of Gender Motivated Violence Protection Act against Ortega, *id.* ¶¶ 117-120 (Ninth Cause

of Action).  On September 8, 2022, the Corporate Defendants removed the case to this District

with the consent of the Individual Defendants.  Dkt. 1 ¶ 11.

  Plaintiff moved to proceed anonymously on December 6, 2022, Dkt. 35; *see also* Dkts. 44,

45 ("Motion for Pseudonym"), and Defendants moved to dismiss on December 9, 2022, Dkts. 37,

38 ("MTD"), 39-41.  In their motion, Defendants argued, among other things, that the Court lacks

personal jurisdiction over the Individual Defendants, who both reside in Florida, because all

---

[3] Plaintiff also named Acun Media Pacific LLC ("Acun") as a defendant, alleging that Acun "was a production company for the [S]how . . . during the season that Plaintiff was a contestant."  Am. Compl. ¶ 7.  The Court since has dismissed all claims against Acun with prejudice pursuant to a stipulation of dismissal between Plaintiff and Acun.  Dkt. 55.

pertinent events allegedly occurred outside of New York.  MTD at 3, 28-36.  Defendants also argued that Plaintiff's claims under the NYSHRL and New York City's Gender-Motivated Violence Protection Law (the Third and Ninth Causes of Action) should be dismissed for lack of any allegations connecting either Plaintiff or the events giving rise to her claims to the State of New York or New York City, *id.* at 12-15, and that Plaintiff's intentional tort claims (the Fourth through Sixth Causes of Action) should be dismissed as untimely, *id.* at 15-18.

On January 6, 2023, the Individual Defendants filed an opposition to Plaintiff's motion to proceed pseudonymously, Dkts. 48 ("Bea Declaration"), 49 ("Pseudonym Opp."), and Plaintiff filed an opposition to the motion to dismiss, Dkts. 50 ("MTD Opp."), 51.  In her opposition, Plaintiff explicitly "withdr[ew] her intentional torts claims (Plaintiff's Fourth through Sixth Causes of Action) as the emotional and psychological trauma suffered by Plaintiff hampered her ability to bring this lawsuit until the time for those claims had passed."  MTD Opp. at 2.  While arguing that the motion to dismiss "should be denied" "[a]s to Plaintiff's remaining claims," *id.*, Plaintiff failed to lodge any arguments in support of her claims under New York State and New York City law.  Finally, in support of personal jurisdiction over the Individual Defendants, Plaintiff attached a draft agreement relating to her participation on the Show.  MTD Opp., Exh. 1 (the "Participant Agreement").  In a sworn declaration, Plaintiff's counsel states that Defendants asked Plaintiff to sign the Participant Agreement "as a prerequisite for appearing as a contestant on [the Show]."  Dkt. 51 ¶ 1.  The Participant Agreement contains a forum selection clause which states that "[t]his Agreement will be governed and construed under the laws of the State of New York without regard to conflicts of law provisions," and that "[t]he parties submit to the in personam jurisdiction of the Supreme Court of the State of New York in New York County and the United

States District Court for the Southern District of New York for purposes of," among other things, "any court proceeding under this Agreement."  Participant Agreement, art. 18.

On January 27, 2023, Plaintiff replied in support of her motion to proceed pseudonymously, Dkt. 52 ("Pseudonym Reply"), and Defendants replied in support of their motion to dismiss, Dkt. 53.  On April 27, 2023, while the motions were still pending, the Individual Defendants submitted a supplemental letter in opposition to the motion to proceed pseudonymously.  Dkt. 58.[4]  Plaintiff replied to that letter on May 5, 2023.  Dkt. 60.

## II.  Motion to Proceed Pseudonymously

### A.    Legal Standard

"[W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008).  There is a presumption that a plaintiff will proceed under her own name. *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020) (per curiam) ("In *Sealed Plaintiff*, we held that pseudonyms are the exception and not the rule, and in order to receive the protections of anonymity, a party must make a case rebutting that presumption.").

The Second Circuit has directed district courts to consider ten "non-exhaustive" factors in balancing these competing interests:

---

[4] The Court previously granted the Individual Defendants leave to maintain certain filings in connection with their opposition to Plaintiff's motion to proceed pseudonymously under seal. *See* Dkts. 46, 57.  However, considering the Court's decision herein that Plaintiff may not proceed under a pseudonym, the Court finds that there is no basis for the continued sealing of these filings. Accordingly, within one week of Plaintiff's filing of the Second Amended Complaint removing her pseudonym, the Individual Defendants shall refile their motion papers with any redactions or sealing removed.

(1) whether the litigation involves matters that are highly sensitive and of a personal nature;

(2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure particularly in light of his age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of the prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 42 (citing *Sealed Plaintiff*, 537 F.3d at 189-90).  The decision whether to allow a party to proceed anonymously is within the sound discretion of the district court.  *Sealed Plaintiff*, 537 F.3d at 190; *see also Doe v. Deloitte LLP Grp. Ins. Plan*, No. 23 Civ. 4743 (JPC), 2023 WL 3993758, at *1 (S.D.N.Y. June 13, 2023).  To that end, "a district court is not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Sealed Plaintiff*, 537 F.3d at 191 n.4.

**B.      Discussion**

**1.      Factor 1: Matters of Highly Sensitive of Personal Nature**

The parties do not dispute that Plaintiff's allegations of rape are highly sensitive and of a personal nature, such that this factor weighs in favor of Plaintiff and against disclosure of her identity.   Motion for Pseudonym at 5; Pseudonym Opp. at 5.   That said, "this factor is not dispositive," and "[c]ourts in this district have explained that allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym."   *Doe v. Weinstein*, 484 F. Supp. 3d 90, 94 (S.D.N.Y. 2020) (internal quotation marks omitted) (collecting cases).

**2.      Factors 2 and 3: Risk of Retaliation and the Severity of Harm to Plaintiff**

"The second and third factors evaluate the risks that identification would present and the likelihood of those physical and mental harms.   If disclosure creates risk of harm from third parties, disclosure is disfavored."   *Doe v. Townes*, No. 19 Civ. 8034 (ALC) (OTW), 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020).   However, "speculative claims of physical or mental harms are insufficient to bolster a request for anonymity."   *Doe v. Skyline Autos. Inc.*, 375 F. Supp. 3d 401, 406 (S.D.N.Y. 2019).   Moreover, "a defendant's prior knowledge of the plaintiff's identity weights against these factors."   *Townes*, 2020 WL 2395159, at *4.   Plaintiff asserts potential "retaliation against [her] or her non-party family members not only by Defendants . . . but also by other media companies who are known to 'blacklist' individuals who object to or complain about the pervasive sexual misconduct in the showbusiness industry," Motion for Pseudonym at 5, and that as a "well-known and respected athlete and media personality," disclosure of her identity "will undoubtedly result in "further damage to her career and professional opportunities," *id.* at 6.

As to the claims of potential harm against Plaintiff herself, "Defendant[s are] already aware of Plaintiff's identity, so there is no risk of increased retaliatory harm from Defendant[s] from

disclosure of Plaintiff's identity." *Townes*, 2020 WL 2395159, at *4; *see also Weinstein*, 484 F. Supp. 3d at 96 ("Keeping Plaintiff's name confidential from the public does nothing to address her concern about the possibility of private retaliation.").   Furthermore, while Plaintiff fears that revealing her identity risks harm from other companies and individuals in media known for "blacklisting," courts in this Circuit have repeatedly held that a plaintiff's "desire to avoid . . . economic loss is insufficient to permit h[er] to appear without disclosing h[er] identity." *Free Mkt. Comp. v. Commodity Exch., Inc.*, 98 F.R.D. 311, 313 (S.D.N.Y. 1983); *see also Townes*, 2020 WL 2395159, at *4 ("[C]ourts have consistently rejected anonymity requests predicated on harm to a party's reputational or economic interests." (quoting *Abdel-Razeq v. Alvarez & Marsal, Inc.*, No. 14 Civ. 5601 (HBP), 2015 WL 7017431, at *4 (S.D.N.Y. Nov. 12, 2015), and collecting cases)); *see also Abdel-Razeq*, 2015 WL 7017431, at *4  (collecting additional cases); *Guerrilla Girls, Inc. v. Kaz*, 224 F.R.D. 571, 573 (S.D.N.Y. 2004) ("Courts should not permit parties to proceed pseudonymously just to protect the parties' professional or economic life.").   Finally, Plaintiff's claims of retaliation against her unnamed "non-party family members" are completely speculative as Plaintiff does not explain what form the "retaliation" would take, let alone provide any evidence in support of that concern.  *See, e.g.*, *Doe v. Leonelli*, No. 22 Civ. 3732 (CM), 2022 WL 2003635, at *3 (S.D.N.Y. June 6, 2022) (concluding that the plaintiff's "fail[ure] to identify any direct evidence linking disclosure to any specific physical or mental injury" weighed against proceeding pseudonymously on these factors); *Doe v. McLellan*, No. 20 Civ. 5997 (GRB) (AYS), 2020 WL 7321377, at *2 (E.D.N.Y. Dec. 10, 2020) ("Plaintiff submits no evidence of continued harm, nor any evidence of the severity or likelihood of retaliation or any physical or mental harm. Plaintiff simply projects generalized harm, and more is required for her to satisfy her burden."); *Skyline Autos.*, 375 F. Supp. 3d at 406 (similar).

Accordingly, factors two and three weigh in favor of disclosure.

### 3.      Factor 4:  Vulnerability Due to Plaintiff's Age

The sole consideration in weighing the fourth *Sealed Plaintiff* factor is Plaintiff's age.  "If a plaintiff is not a child, this factor weighs against a finding for anonymity."  *Rapp v. Fowler*, 537 F. Supp. 3d 521, 530 (S.D.N.Y. 2021) (quoting *Doe v. Solera Cap. LLC*, No. 18 Civ. 1769 (ER), 2019 WL 1437520, at *6 (S.D.N.Y. Mar. 31, 2019)).  Here, Plaintiff is not a child, nor was she at the time she was filming the Show and was allegedly raped by Ortega.  Nor has she "identified any reason for the Court to treat her as more vulnerable than the great run of adult plaintiffs who bring allegations of sexual assault in their own names, subject to public scrutiny."  *Weinstein*, 484 F. Supp. 3d at 96.  In fact, she has failed to address this factor entirely.  Accordingly, factor four weighs in favor of disclosure.

### 4.      Factor 5: Government or Private Action

"[C]ourts are less inclined to allow [plaintiffs] to proceed anonymously in private party cases" because "suits against private parties may cause damage to their good names and reputations," whereas "[s]uits against the government involve no injury to the [g]overnment's reputation."  *Skyline Autos.*, 375 F. Supp. 3d at 406 (internal quotation marks omitted).  Further, courts recognize that "[i]n private civil suits, . . . there is a significant interest in open judicial proceedings since such suits do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms."  *Rapp*, 537 F. Supp. 3d at 532 (internal quotation marks omitted).  Here, Plaintiff "challenge[s] the actions of private parties; thus, there is a significant interest in open judicial proceedings weighing against the use of pseudonym."  *Leonelli*, 2022 WL 2003635, at *4.  Factor five therefore weighs in favor of disclosure.

5.      **Factor 6: Prejudice to Defendants**

Plaintiff argues that the consideration of any prejudice to Defendants from her proceeding by pseudonym points in her favor because Defendants already know her identity.  Motion for Pseudonym at 6-7.  But that fact alone is not dispositive.  *Townes*, 2020 WL 2395159, at *6. Rather, when analyzing this sixth factor, courts consider a variety of potential prejudice to a defendant including "difficulties in conducting discovery, the reputational damage to defendants, and the fundamental fairness of proceeding anonymously."  *Rapp*, 537 F. Supp. 3d at 531 (internal quotation marks omitted).

Regarding discovery difficulties, while some courts have concluded that a defendant who "already knows Plaintiff's real identity . . . is not 'greatly prejudiced in his ability to conduct discovery,'" *Doe v. Gooding*, No. 20 Civ. 6569 (PAC), 2022 WL 1104750, at *7 (S.D.N.Y. Apr. 13, 2022) (quoting *Townes*, 2020 WL 2395159, at *6), others note that an "asymmetry in fact-gathering . . . cannot be avoided by the fact that plaintiff already has provided defendant with h[er] name" because "[w]here a case involves potential publicity . . . with one party anonymous[,] information about only one side may come to light as a result," *Leonelli*, 2022 WL 2003635, at *5 (internal quotation marks and alterations omitted); *see also Rapp*, 537 F. Supp. 3d at 531 (noting that a plaintiff's "use of a pseudonym likely would prevent persons with information about [him] or his allegations that would be helpful to [the] defense, but that now are unknown to [the defendant], from coming forward," and collecting cases).  Furthermore, when allegations involve a defendant's sexual assault or rape, courts uniformly recognize that "reputational damage risk to [a d]efendant is high."  *Townes*, 2020 WL 2395159, at *6; *see also Leonelli*, 2022 WL 2003635, at *5; *Rapp*, 537 F. Supp. 3d at 531.

"Finally, fundamental fairness suggests that defendants are prejudiced when required to defend themselves publicly before a jury while plaintiffs make accusations from behind a cloak of

anonymity." *Leonelli*, 2022 WL 2003635, at *5 (internal quotation marks, brackets, and ellipses omitted); *see Rapp*, 537 F. Supp. 3d at 531-32 (same); *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015) (same); *see also Townes*, 2020 WL 2395159, at *6 ("[F]airness requires that plaintiff be prepared to stand behind her charges publicly because plaintiff has made serious charges." (internal quotation marks and brackets omitted)).  To that end, the Individual Defendants have brought to the Court's attention several news articles in which Plaintiff's lawyers have unabashedly publicized this lawsuit, lodging accusations against the Individual Defendants while also trumpeting Plaintiff's decision to remain anonymous.  *See* Dkt. 48 ("Bea Declaration"), Exhs. A, B, D-F; *see also* Pseudonym Opp. at 11 & n.5.  This is not the kind of behavior that bespeaks a need to remain anonymous.

Thus, on balance, the sixth factor weighs in favor of disclosure.

### 6.      Factor 7: The Status of Confidentiality in the Proceedings

"The seventh *Sealed Plaintiff* factor inquires as to the status of a plaintiff's confidentiality thus far in the litigation."  *Skyline Autos.*, 375 F. Supp. 3d at 407.  Here, Plaintiff's identity is clearly no longer confidential.

Most significantly, there is evidence that Plaintiff herself has revealed her identity and the allegations that give rise to this lawsuit.  *See* Bea Declaration, Exh. C at 2 (reporting that Plaintiff "revealed during an interview with her on [an] entertainment program . . . that several people harassed her during the time she was" filming the Show).  While Plaintiff disputes this evidence in her reply brief, arguing that "it was Plaintiff's counsel, not Plaintiff, who appeared on that program, and never once used Plaintiff's name or identified her," Pseudonym Reply at 4, the Court does not credit this unsworn assertion given that the article identifies Plaintiff by name and with a photograph of her on the cover, Bea Declaration, Exh. C at 1-2.

Regardless, the question is not whether Plaintiff revealed her own identity, but whether her identity is no longer confidential. *See Rapp*, 537 F. Supp. 3d at 528 (describing the seventh factor as "whether the plaintiff's identity thus far has been kept confidential"); *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) (noting that "the plaintiff's interest in anonymity is weaker where anonymity has already been compromised"); *Abdel-Razeq*, 2015 WL 7017431, at *6 (finding the seventh factor weighed in favor of disclosure because "third-party websites have posted information concerning the action, including the fact that Ryan is named as a defendant"); *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (denying motion to proceed pseudonymously in part because the "plaintiff has conceded that the press has known her name for some time. . . . Hence, her identity is not unknown"). The answer is clearly that Plaintiff's identity is no longer confidential. Plaintiff's identity has been percolating in the public record since approximately one month after the initial filing of this lawsuit in New York County Supreme Court. *See* Bea Declaration, Exhs. B, D-F; Dkt. 58-1. While Plaintiff attempts to brush this off as "some small news outlets . . . speculat[ing] as to her identity, or . . . a curious person . . . cobbl[ing] her identity together with sufficient research and time," Dkt. 60 at 1, the fact of the matter is the secret is out. It does not matter whether she herself spilled the beans, or if members of the public were able to put the pieces of the puzzle together themselves. All that matters for the seventh *Sealed Plaintiffs* factor is that Plaintiff's identity is no longer confidential.

Accordingly, this factor weighs strongly—almost dispositively—in favor of disclosure.

### 7.    Factors 8 and 9: The Public Interest in Litigation

"The eighth and ninth factors direct courts to balance whether the public's interest in the litigation is furthered by disclosure of the plaintiff's identity . . . ." *Townes*, 2020 WL 2395159, at *6. "[I]f the issues presented are 'purely legal in nature,' generally 'there is an atypically weak public interest in knowing the litigants' identi[t]ies.'" *Skyline Autos.*, 375 F. Supp. 3d at 408

(quoting *Sealed Plaintiff*, 537 F.3d at 190).  Where, however, "the litigation involves, not abstract challenges to public policies, but rather . . . particular action and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication."  *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, No. 12 Civ. 6152 (VM) (KNF), 2012 WL 5899331, at *8 (S.D.N.Y. Nov. 26, 2012) (internal quotation marks omitted).

In this case, there are no abstract questions of law at issue.  Rather, Plaintiff alleges that she was wrongfully imprisoned, sexually assaulted, and then unlawfully retaliated against on the basis of sex.  *See supra* I.A; *see also, e.g.*, *Weinstein*, 484 F. Supp. 3d at 97-98; *McLellan*, 2020 WL 7321377, at *4; *Townes*, 2020 WL 2395159, at *6; *Skyline Autos.*, 375 F. Supp. 3d at 408. "Any analysis and litigation in this case will be factual in nature, and the public interest in sexual assault . . . is very high."  *Skyline Autos.*, 375 F. Supp. 3d at 408; *McLellan*, 2020 WL 7321377, at *4 (same).  This is particularly true here, where the accuser, by her own admission, is a "respected athlete and television personality," Am. Compl. ¶ 1—a public figure in her own right.  *See Weinstein*, 484 F. Supp. 3d at 97 ("There is great public interest in not only the allegations against Weinstein, but also in the identities of his accusers, some of whom are also public figures.").  And Plaintiff's only argument—that "public interest weighs in favor of Plaintiff's anonymity so that victims of sexual assault will not be deterred from vindicating their rights," Pseudonym Reply at 4—while rational and not unsympathetic, has been repeatedly rejected by courts in this District as an adequate basis by itself to warrant anonymity.  *See, e.g.*, *Leonelli*, 2022 WL 2003635, at *4; *Rapp*, 537 F. Supp. 3d at 532-33; *Weinstein*, 484 F. Supp. 3d at 98.

Accordingly, these factors favor disclosure.

8.      **Factor 10: Alternative Mechanisms**

"The final factor asks courts to consider what other mechanisms exist for protecting plaintiff's confidentiality." *Townes*, 2020 WL 2395159, at *6.  Plaintiff in fact admits that "there may be other mechanisms in which Plaintiff's interest can be protected, including the redaction of documents and sealing."  Pseudonym Reply at 5.  Both the Individual Defendants and numerous other courts in this Circuit have noted these mechanisms as well.  *See, e.g.*, *Leonelli*, 2022 WL 2003635, at *5; *Rapp*, 537 F. Supp. 3d at 533; *McLellan*, 2020 WL 7321377, at *4; *Weinstein*, 484 F. Supp. 3d at 98; *Skyline Autos.*, 375 F. Supp. 3d at 408; *see* Pseudonym Opp. at 16-17 (collecting cases).  Plaintiff's primary argument is that by relying on these mechanisms "the parties will likely engage in further disputes related to Plaintiff's anonymity," which could lead to "many motions to be filed with the Court" and "unnecessary delays . . . adverse to judicial efficiency."  Pseudonym Reply at 5.  While the Court appreciates Plaintiff's concern for judicial economy and efficiency, the Court will appropriately manage and resolve filings in this case.  And more to the point, judicial economy is not a relevant consideration under the *Sealed Plaintiff* factors.

Accordingly, the tenth factor favors disclosure.

* * *

After careful review of the relevant factors, the Court finds that Plaintiff has not met her burden of rebutting the presumption that she must proceed under her own name.  Nine of the ten factors favor disclosure—and most notably, Plaintiff's identity is already a matter of public record. The only factor which favors Plaintiff—the first factor—is not dispositive.  Accordingly, Plaintiff's motion to proceed pseudonymously is denied.  As discussed *infra*, Plaintiff shall file a Second Amended Complaint, and, in doing so, must amend the case caption to reflect her true name.

### III.  Motion to Dismiss

**A.     Legal Standard**

**1.       Federal Rule of Civil Procedure 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) allows a party to move to dismiss prior to filing an answer for lack of personal jurisdiction.  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (internal quotation marks omitted).  A plaintiff bears the burden of raising facts that, "if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks and brackets omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  Although all allegations are "construed in the light most favorable to the plaintiff," *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993), a court need not "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 673 (citations and internal quotation marks omitted).  *See also Newton v. Meyer*, No. 22 Civ. 540 (JPC), 2023 WL 2563115, at *5 (S.D.N.Y. Mar. 17, 2023).

**2.       Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A complaint's "[f]actual allegations must be enough

17

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).  *See Zucaro v. Venable*, No. 21 Civ. 8775 (JPC), 2023 WL 2691557, at *4 (S.D.N.Y. Mar. 29, 2023).

## B.    Discussion

### 1.    Personal Jurisdiction

The Court begins by addressing its personal jurisdiction over the Individual Defendants. *See Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC*, No. 20 Civ. 7351 (AJN), 2021 WL 3423253, at *2 (S.DN.Y. Aug. 5, 2021) ("Whether there is personal jurisdiction is a 'threshold matter' that should usually precede determination of the merits." (quoting *In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 267-68 (2d Cir. 2001))); *see also Newton*, 2023 WL 2563115, at *6.  Ordinarily, assessing this Court's personal jurisdiction over a defendant involves a two-step process.  First, there must be a "statutory basis for exercising personal jurisdiction."  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).  In evaluating this requirement, federal courts "look first to the long-arm statute of the forum state, in this instance, New York."  *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997); *see also Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2021 WL 1895033, at *5 (S.D.N.Y. May 11, 2021).  Second, the Court must determine whether the exercise of personal jurisdiction comports with due process.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-74 (1985); *Chloé*, 616 F.3d at 164.

Alternatively, "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *see also Burger King Corp.*, 471 U.S. at 472 n.14 ("[B]ecause the personal jurisdiction

requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.  For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction.").  In this situation, the Court need not consider New York's long-arm statute or federal due process so long as the forum selection clause in the Participation Agreement is "valid and enforceable."  *See NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 342 (S.D.N.Y. 2020) (internal quotation marks omitted).

To determine whether a forum selection clause is enforceable, the Court asks: "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive . . . ; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (internal quotation marks and ellipsis omitted).  "If the forum clause was communicated to the resisting party, has the mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable," and the resisting party can overcome this presumption only "by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (internal quotation makes omitted).  "Federal law governs" this enforceability inquiry.  *Matter of Hapag-Lloyd Aktiengesellschaft*, 573 F. Supp. 3d 934, 953 (S.D.N.Y. 2021) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991)); *see also Phillips*, 494 F.3d at 384 (explaining that "federal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable . . . because enforcement of forum clauses is an essentially procedural issue").

Here, Plaintiff does not respond to Defendants' arguments that personal jurisdiction is improper under New York's long-arm statute and that personal jurisdiction does not comport with federal due process. *See* MTD at 28-36; MTD Opp. at 3-4. Rather, Plaintiff's sole argument is that the Court may exercise personal jurisdiction pursuant to the forum selection clause in the Participant Agreement, which Plaintiff claims "she was forced to sign to appear on Defendants' show." MTD Opp. at 4. As noted above, the draft of the Participant Agreement provided by Plaintiff states that "[t]his Agreement will be governed and construed under the laws of the State of New York without regard to conflicts of law provisions," and that "[t]he parties submit to the in personam jurisdiction of the Supreme Court of the State of New York in New York County and the United States District Court for the Southern District of New York for purposes of," among other things, "any court proceeding under this Agreement." Participant Agreement, art. 18. Defendants do not contest the validity of this clause as to Plaintiff's claims in this lawsuit; instead, they note that "[n]ot a single Defendant is a party to the Agreement," and "Plaintiff provides no explanation for why any Defendant, let alone Suarez and Ortega, [is] bound by the terms of an Agreement they did not sign." MTD Reply at 3-4 (emphasis removed). Thus, argue Defendants, Plaintiff's showing is "insufficient to meet her burden to establish personal jurisdiction over [the] Individual Defendants." *Id.* at 4.

Forum selection clauses "'are prima facie valid,' and should generally be enforced." *NuMSP*, 462 F. Supp. 3d at 343 (quoting *Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 720-21 (2d Cir. 2013)); *see also Martinez*, 740 F.3d at 218 ("The presumptive enforceability of forum selection clauses reflects a strong federal public policy of its own . . . ."). Moreover,

while the Individual Defendants do not appear to be signatories to the Participant Agreement,[5] MTD Reply at 3, "the fact [that] a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum-selection clause," *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009).  Indeed, "[i]t is well established in this Circuit that a non-signatory may enforce a forum selection clause against a signatory where the non-signatory is 'closely related' to a signatory," and "[w]hile the Second Circuit has not reached the question of when a signatory may enforce a forum selection clause against a non-signatory, a number of district court cases in this Circuit have embraced the 'closely related' standard in cases analogous to this one." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 324 (S.D.N.Y. 2017) (first quoting *Magi XXI*, 714 F.3d at 723, then collecting cases); *see also Shipco Transp., Inc. v. Roll on Roll off Co., LLC*, No. 22 Civ. 3577 (LLS), 2023 WL 4824452, at *4 (S.D.N.Y. July 27, 2023).

"A non-signatory is 'closely related' 'if its interests are "completely derivative" of and "directly related to, if not predicated upon" the signatory party's interests or conduct.'" *Yeda Rsch. & Dev. Co. Ltd. V. iCAD, Inc.*, No. 18 Civ. 8083 (GBD), 2019 WL 4562409, at *6 (S.D.N.Y. Sept. 5, 2019) (quoting *Overseas Ventures, LLC v. ROW Mgmt., Ltd., Inc.*, No. 12 Civ. 1033 (PAE), 2012 WL 5363782, at *5 (S.D.N.Y. Oct. 26, 2012)).  "The key inquiry . . . is whether enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *NuMSP*, 462 F. Supp. 3d at 350 (internal quotation marks omitted). Thus, "[t]he vast majority of cases that have found a non-signatory bound by a forum selection clause under the theory that they are 'closely related' to the signatory or the dispute have done so where the non-signatory had an active role in the transaction between the signatories or where the

---

[5] While Plaintiff only submitted a draft of the Participant Agreement, it states that "[t]his PARTICIPANT AGREEMENT . . . is executed by and between:  1.1  Acun Medya Korlátolt Felelősségű Társaság ("PRODUCER"); and 1.2  ………….. ("Player")."

non-signatory had an active role in the company that was the signatory." *Prospect Funding Holdings*, 256 F. Supp. 3d at 351.

Here, the Court is unable to determine whether personal jurisdiction over the Individual Defendants would be proper based on the current record. For one thing, the parties have not even presented the Court with a final, executed copy of the Participant Agreement—again, the exhibit submitted in connection with Plaintiff's opposition is merely a draft agreement. *See* MTD Opp. at 1 n.2. Moreover, the parties have not yet addressed whether the Individual Defendants are "closely related" to the apparent signatory of the Participant Agreement—Acun Medya Korlátolt Felelősségű Társaság—such that they would be bound by the forum selection clause. However, the Court finds that Plaintiff has made a sufficient showing to warrant jurisdictional discovery on the closely related issue.

"It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Al Thani*, 2021 WL 1895033, at *14 (quoting *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014)); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." (internal quotation marks omitted)). Indeed, "[w]hether a party is closely related to a signatory is a fact-specific inquiry," *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 561 (S.D.N.Y. 2013), and courts in this Circuit frequently order jurisdictional discovery on this issue, *see That's What She Said, Inc. v. Gutter Games Ltd.*, No 22 Civ. 4230 (KPF), 2023 WL 3346508, at *6 (S.D.N.Y. May 9, 2023) (collecting cases). Moreover, while Plaintiff has not explicitly requested

22

jurisdictional discovery, she has made references to requiring more discovery to fully flesh out her arguments—particularly in the context of personal jurisdiction.  *See, e.g.*, MTD Opp. at 1 n.2 ("Should Defendants dispute that this document is applicable or enforceable here, Plaintiff expects that discovery will unveil the executed agreement."), 6 ("Dismissal is not [appropriate] here because, *especially pre-discovery*, Defendants cannot and have not offered any evidence . . . as to why the forum that they have selected would be unfair . . . ." (emphasis added)).  Regardless, the Court has "considerable procedural leeway" in how to decide a motion to dismiss, including to "permit discovery in aid of the motion."  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

Defendants have not disputed Plaintiff's assertions that she was required to sign the Participant Agreement to appear on the Show and that she did in fact sign the Participant Agreement (despite apparently not retaining an executed copy).  *See* MTD Opp. at 1 & n.2. Moreover, both Suarez and Ortega submitted declarations in support of their motion to dismiss, Dkts. 39, 41, yet neither disputes Plaintiff's allegations that each was a producer on the Show, *see, e.g.*, Am. Compl. ¶¶ 8-9, 17-18, 35, 96.  Given that Acun Medya Korlátolt Felelősségű Társaság is defined in the agreement as "PRODUCER," it is conceivable that that entity could be "closely related" to Ortega and Suarez—as also producers on the Show—for the purposes of personal jurisdiction.  Moreover, jurisdictional discovery would be particularly appropriate in this case given that Defendants are likely in a better position than Plaintiff to speak to the exact relationships between the Individual Defendants and Acun Medya Korlátolt Felelősségű Társaság, and how each worked on the production of the Show.  Courts frequently order jurisdictional discovery when defendants are logically in possession of the facts relevant to the plaintiff's *prima facie* case.  *See, e.g.*, *Al Thani*, 2021 WL 1895033, at *14 (ordering jurisdictional discovery "[b]ecause [the

plaintiff] dealt primarily with [one of the defendants], [and so,] it is not surprising that he would not know the inner-workings of the [defendants'] conspiracy and the relationships between the co-conspirators"); *cf. Newton*, 2023 WL 2563115, at *9 (observing that "jurisdictional discovery would be particularly appropriate in this case given that a person in Newton's position who received a phone call typically would not know the exact location of a caller without asking" but finding that discovery to be futile because the plaintiff had failed to state a claim against the defendant).

Thus, because Plaintiff asserts that she was forced to sign the Participant Agreement as a prerequisite to her appearance on the Show, and because the Individual Defendants are alleged to be producers of the Show, she "has made the requisite 'sufficient start' towards establishing personal jurisdiction for the Court to order jurisdictional discovery." *That's What She Said*, 2023 WL 3346508, at *6. Accordingly, the Court will postpone its determination on whether personal jurisdiction exists over the Individual Defendants, and so the motion to dismiss for lack of personal jurisdiction is denied without prejudice to renewal following jurisdictional discovery.

### 2. Failure to State a Claim

The Court now turns to the remainder of Defendants' motion arguing for dismissal on the merits of all but the First Cause of Action. *See* MTD at 6-28; *see also* MTD Reply at 10. As an initial matter, the Court grants the motion as to the Fourth, Fifth, and Sixth Causes of Action in light of Plaintiff's statement that she "is withdrawing her intentional torts claims (Plaintiff's Fourth through Sixth Causes of Action) as the emotional and psychological trauma suffered by Plaintiff hampered her ability to bring this lawsuit until the time for those claims had passed." MTD Opp. at 2. The Court agrees that these claims are untimely.

Pursuant to section 215(3) of the New York Civil Practice Law and Rules, "[t]he statute of limitations for intentional torts in New York is one year from the intentional act." *Sutton v. Marie*,

No. 21 Civ. 6787 (MKV), 2022 WL 3904100, at *4 (S.D.N.Y. Aug. 30, 2022).[6]  Plaintiff alleges

that her false imprisonment occurred "[i]n or around August through September 2019" when she

was allegedly hospitalized while filming the Show.  Am. Compl. ¶ 16.  She further alleges that she

was raped by Ortega on the night of December 28, 2019.  *Id.* ¶ 20.  Thus, each of her claims for

intentional torts accrued in 2019.  *See Hincapie v. City of New York*, 434 F. Supp. 3d 61, 78

(S.D.N.Y. 2020) ("Under New York law, 'causes of action based on false arrest and false

imprisonment accrue upon the subject's release from confinement . . . .'" (quoting *Bellissimo v.*

*Mitchell*, 995 N.Y.S.2d 603, 605 (2d Dep't 2014))); *Tchatat v. City of New York*, No. 14 Civ. 2385

(LGS), 2015 WL 5091197, at *14 (S.D.N.Y. Aug. 28, 2015) (noting that "[a]ssault and battery

claims alleged under New York law accrue on the date of the alleged incident" and "[intentional

infliction of emotional distress] claims, based on harm allegedly incurred from an assault, accrue

on the date of the alleged assault").  Plaintiff initiated this lawsuit on August 17, 2022, Dkt. 1 ¶¶ 1-

2—more than one year after each incident allegedly occurred.  Accordingly, her intentional tort

claims—brought in the Fourth, Fifth, and Sixth Causes of Action—are time-barred and thus are

dismissed with prejudice.  *See Brandon v. Musoff*, No. 10 Civ. 9017 (KBF), 2012 WL 135592, at

*4 (S.D.N.Y. Jan. 17, 2012) ("[W]hen a cause of action falls outside the applicable statute of

limitations, dismissal with prejudice is justified.").

In addition, the Court dismisses Plaintiff's Third and Ninth Causes of Action as abandoned.

"'[W]hen a party fails adequately to present arguments' in a brief, a court may properly 'consider

those arguments abandoned' . . . ."  *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir.

---

[6] The parties' briefing assumes that New York law governs Plaintiff's tort claims, and "such implied consent is sufficient to establish choice of law" for the purposes of this motion. *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000) (internal quotation marks and ellipsis omitted); *see also Newton*, 2023 WL 2563115, at *9 n.13.

2021) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004)).  This is particularly so "in the case of a counseled party" where "a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014); *see also DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018) (collecting cases where courts deemed plaintiffs to have abandoned claims by failing to address them when opposing a dispositive motion).  Here, Defendants argue persuasively that Plaintiff's claims under the NYSHRL and the Victims of Gender-Motivated Violence Protection Law should be dismissed for lack of any allegations connecting those claims to the State of New York or New York City.[7]  MTD at 12-15; *see also Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 746 (N.Y. 2010) (holding that "nonresidents of the city and state must plead and prove that the alleged discriminatory conduct had an impact within those respective boundaries"); *Beverley v. 1115 Health & Benefits Fund*, 420 F. Supp. 2d 47, 56 n.2 (E.D.N.Y. 2005) ("The NYC Code . . . applies only to acts occurring within the boundaries of New York City." (internal quotation marks and emphasis omitted)).  Plaintiff wholly failed to address those arguments.  Accordingly, her Third and Ninth Causes of Action are dismissed as well.

As to Plaintiff's remaining claims, however, the Court declines to address Defendants' arguments in support of dismissal at this time, in the interest of judicial economy.  First, all but one of Plaintiff's remaining causes of action—the Seventh Cause of Action—are alleged against Suarez and/or Ortega in addition to the Corporate Defendants.[8]  Because "a federal court generally

---

[7] Indeed, the words "New York" do not appear once in the Statement of Facts in the Amended Complaint.  *See* Am. Compl. ¶¶ 13-37.

[8] Moreover, while the Seventh Cause of Action is only alleged against the Corporate Defendants, it is tied to the same facts underlying the other causes of action.

may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction)," *Sinochem Int'l Co.  Ltd., v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." (internal quotation marks and ellipsis omitted)), and because Defendants' arguments for dismissal on the merits of the remaining Causes of Action apply equally to the Individual Defendants as well as the Corporate Defendants, the efficient course of action would be to defer consideration of those arguments until after jurisdictional discovery.  *See That's What She Said*, 2023 WL 3346508, at *7 ("Finding that jurisdictional discovery is necessary, the Court dismisses [the defendant's] motion to dismiss without prejudice to its renewal and declines to reach the Rule 12(b)(6) issue until it is assured of its jurisdiction.").

Second, Plaintiff has requested leave to further amend the Amended Complaint.  *See* MTD Opp. at 18-19.  Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, a court should freely give leave to amend "when justice so requires."  "When deciding whether to grant leave to amend, courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility." *Zucaro*, 2023 WL 2691557, at *7 (internal quotation marks omitted).  In this case, while Plaintiff has already amended her complaint once, she did so merely to correct the spelling of Suarez's name, Dkt. 1 ¶ 2.  Thus, "Plaintiff did not yet have the benefit of knowing what deficiencies Defendant would raise to challenge the [Amended] Complaint."  *Gomez v. Credit Suisse AG*, No. 22 Civ. 115 (JPC) (BCM), 2023 WL 2744415, at *14 (S.D.N.Y. Mar. 31, 2023).  Moreover, "with discovery having not commenced, this case is still in its infancy, so there would be minimal prejudice to Defendants

in granting leave to amend." *Paul Hobbs Imports Inc. v. Verity Wines LLC*, No. 21 Civ. 10597 (JPC), 2023 WL 374120, at *15 (S.D.N.Y. Jan. 24, 2023) (internal quotation marks and brackets omitted). Thus, even if the Court were to agree with Defendants and dismiss Plaintiff's Second, Seventh, and Eighth Causes of Action on the merits, the Court would do so without prejudice to Plaintiff filing a Second Amended Complaint.[9]

Accordingly, Defendants' motion to dismiss the Second, Seventh, and Eighth Causes of Action is denied without prejudice to refiling following Plaintiff's Second Amended Complaint and jurisdictional discovery.[10] The Court recognizes, however that Defendants have presented several nonfrivolous arguments (elucidated in extremely thorough briefing) in support of dismissal. Plaintiff has now been made aware of the legal flaws that Defendants believe exist in her Amended Complaint. Plaintiff is thus on notice that, to the extent Defendants re-move to dismiss the forthcoming Second Amended Complaint, and the Court grants that motion, such dismissal may be with prejudice and without leave to further amend.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion to proceed pseudonymously is denied, and Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's Fourth, Fifth, and

---

[9] Indeed, while Defendants argue that "Plaintiff's request for leave to amend should be denied as futile and procedurally improper," MTD Reply at 10, "[a] district court has broad discretion in determining whether to grant leave to amend," *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). The Court finds granting leave to amend here to be particularly appropriate given the relatively early stage of this case and that Defendants seek dismissal for failure to state a claim.

[10] While Plaintiff may also amend and re-allege her Third and Ninth Causes of Action, the Court emphasizes that Plaintiff should only do so if she is able to resolve the pleading deficiencies identified in Defendants' motion papers—*i.e.*, that Plaintiff fails to allege any impact in the State or City of New York.

Sixth Causes of Action are dismissed with prejudice, and the Third and Ninth Causes of Action are dismissed without prejudice.  The motion is otherwise denied without prejudice.

Plaintiff shall file the Second Amended Complaint as contemplated by this Opinion and Order by October 26, 2023.  The Second Amended Complaint shall be brought under Plaintiff's true name.

The parties shall meet and confer regarding the scope of discovery relating to the Court's personal jurisdiction over the Individual Defendants, and shall file a letter by October 10, 2023, proposing a schedule for completion of that discovery.  The parties also shall appear before the undersigned for an Initial Pretrial Conference in accordance with Rule 16 of the Federal Rules of Civil Procedure on October 31, 2023, at 9:30 a.m., in Courtroom 12D of the Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, New York 10007.  By October 24, 2023, the parties shall submit to the Court a proposed case management plan and scheduling order addressing non-jurisdictional discovery.  A template for a proposed case management plan and scheduling order is available at https://www.nysd.uscourts.gov/hon-john-p-cronan.

The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 37 and 44.

SO ORDERED.

Dated: September 26, 2023
      New York, New York
                                            JOHN P. CRONAN
                                  United States District Judge