```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
OLIMPIA VILLALOBOS,                                                    :
                                                                       :
                                Plaintiff,                             :
                                                                       :        22 Civ. 7665 (JPC)
                -v-                                                    :
                                                                       :        OPINION AND ORDER
TELEMUNDO NETWORK GROUP LLC, et al.,                                   :
                                                                       :
                                                                       :
                                Defendant.                             :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Plaintiff Olimpia Villalobos is a Mexican citizen who competed on "Exatlón Estados Unidos," a Spanish-language, athletics-based reality television show. The show is owned by a foreign company called Acun Medya Korlátolt Felelősségű Társaság ("Acun Medya"), and Villalobos appeared in a season that was filmed in the Dominican Republic. Alleging that she was sexually assaulted after suffering an injury while filming the show, Villalobos brings various federal and state law causes of action. The named Defendants include Rafael Ortega and Francisco Suarez, two citizens of Florida who were involved in the production of the show, and Villalobos's allegations concern conduct by these individuals in the Dominican Republic and Mexico.

Ortega and Suarez move to dismiss Villalobos's claims against them for lack of personal jurisdiction, arguing that neither they nor Villalobos's claims have any connection to the State of New York. Villalobos responds that Ortega and Suarez are subject to this Court's jurisdiction because, as a condition of her appearance on the television show, Villalobos and Acun Medya entered into a contract with a forum-selection clause choosing New York County and this District as forums for any disputes under the contract. Although neither Ortega nor Suarez are parties to

that contract, and although neither has ever been employed by Acun Medya, Villalobos argues that both nonetheless should be bound to the contract's terms because they helped produce the television show. The Court disagrees. Such an attenuated connection to the State of New York, without more, is insufficient for the Court to exercise personal jurisdiction. The Court therefore grants Ortega's and Suarez's motions to dismiss without prejudice to refiling in a proper forum.

### I. Background[1]

The Court assumes familiarity with the facts alleged in this case, which were described at length in the Court's Opinion of September 26, 2023. *See Doe v. Telemundo Network Grp. LLC*, No. 22 Civ. 7665 (JPC), 2023 WL 6259390, at *1-3 (S.D.N.Y. Sept. 26, 2023). The facts and procedural history thus are summarized herein only to the extent relevant to resolving the pending motions.

"Exatlón Estados Unidos" (the "Show") is a Spanish-language reality sports competition television show. SAC ¶ 19. Villalobos, a resident of Mexico, appeared as a contestant on Season 3 of the Show, which was filmed in the Dominican Republic during 2019. *Id.* ¶¶ 3, 21; Dkt. 96, Exh. C ("Participant Agreement") at 2. Non-party Acun Medya, a foreign company,[2] owns the

---

[1] The following facts are taken from the Second Amended Complaint, Dkt. 66 ("SAC"), as well as the documents referenced therein and appended to the parties' declarations filed in connection with Ortega's and Suarez's pending motions to dismiss. *See Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 307 (S.D.N.Y. 2015) ("Because a motion to dismiss for lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion." (internal quotation marks omitted)); *ESI Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 50 n.54 (S.D.N.Y. 1999) ("In considering a Rule 12(b)(2) motion, the court may consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56.").

[2] From the parties' submissions, it is unclear whether Acun Medya is a Turkish or Hungarian company. Ortega submitted a news article describing Acun Medya as a Turkish company, Dkt. 93, Exh. B at 2, while the Participant Agreement refers to the company as being organized under the laws of Hungary, Participant Agreement at 2.

Show, its format, and all intellectual property rights thereto. *See* SAC ¶ 10; Dkt. 92 ("Ortega Decl.") ¶ 8; *see also* Dkt. 94 ("Ortega Br.") at 3; Dkt. 97 (Suarez's lead brief) at 6 & n.1; Dkt. 98 ("Opp.") at 4. Pursuant to a broadcasting agreement, Acun Medya licenses its rights to the Show to Telemundo Network Group, LLC ("Telemundo"), allowing Telemundo to broadcast each season on its television network. *See* Participant Agreement at 5, 42 (describing Telemundo as the "broadcasting entity" responsible for broadcasting the show); *see also* Ortega Br. at 4 & n.3; Opp. at 4. Notwithstanding this agreement, Acun Medya remains the producer of the Show, *see* Participant Agreement at 2, and is solely responsible for all attendant duties, including developing the storyline, securing a filming location, and filming and editing the Show, Dkt. 96, Exh. A ("Suarez Dep. Tr.") at 15:14-16:9, 17:16-23, 21:16-22:5, 26:13-29:9.

At all relevant times, Suarez was employed by Telemundo as the Executive Vice President of Primetime Realities and Specials. Dkt. 96, Exh. B ("Suarez Resps.") at 4. In that role, "Suarez's duties with respect to the Show were to ensure that, from a content and visual perspective, the Show met Telemundo's standards for broadcasting." *Id.* While the Show was filming, Ortega was an employee of Yoh Staffing Services and was engaged by Telemundo as a contractor, Ortega Decl. ¶¶ 4-6; Telemundo later hired Ortega as an employee in December 2019, after the filming of the Show had concluded, *id.* ¶ 12. As a contractor for Telemundo, Ortega worked as a "low-level producer of the Show," which required him to perform various tasks such as ensuring that no trademarks were displayed by the contestants, that the contestants' uniforms were clean, and that the contestants had food and water available during competitions. *Id.* ¶¶ 6, 10-11.

As a prerequisite to appearing on the Show, Villalobos and Acun Medya signed a Participant Agreement. SAC ¶ 12. As relevant here, that Participant Agreement contains a forum-selection clause:

3

> This Agreement will be governed and construed under the laws of the State of New York without regard to conflicts of law provisions. The parties submit to the in personam jurisdiction of the Supreme Court of the State of New York in New York County and the United States District Court for the Southern District of New York for purposes of: (i) enforcing the arbitration provision; (ii) confirming any arbitration award or entering judgment thereon; and (iii) any court proceeding under this Agreement.

Participant Agreement at 56.

Villalobos alleges that she was injured during the production of the Show and was taken to a hospital, where Defendants did not allow her to leave. SAC ¶ 22. She alleges that only Ortega was allowed to visit her, and that he confiscated her personal phone and controlled her communication with those outside the hospital. *Id.* ¶¶ 23-25. Following her release from the hospital, on December 28, 2019, Ortega allegedly invited Villalobos and two other contestants to a "business meeting" in Andares, Guadalajara, Mexico. *Id.* ¶ 26. After the meeting ended, Ortega convinced Villalobos to stay in his hotel room instead of securing her own room. *Id.* ¶¶ 29-31. Villalobos alleges that after she fell asleep that night, Ortega sexually assaulted her. *Id.* ¶¶ 32-33. As to Suarez, Villalobos alleges that he was a supervisor on set and a producer "who was unapproachable and had a reputation of supporting the misogynistic culture that allowed sexual harassment and abuse in the workplace," *id.* ¶ 40, and that Suarez "knew from observations of Ortega that he was sexually aggressive," *id.* ¶ 58.

Villalobos initiated this action on August 17, 2022, in the Supreme Court of the State of New York, New York County. Dkt. 1 ¶ 2. After the case was removed to federal court in this District, Defendants moved to dismiss the Amended Complaint, arguing, among other things, that the Court lacked personal jurisdiction over Ortega and Suarez (the "Individual Defendants"). Dkts. 37-41. The Court denied the motion to dismiss for lack of personal jurisdiction without prejudice

4

and ordered jurisdictional discovery. *Telemundo Network Grp.*, 2023 WL 6259390, at *9-11.[3] Villalobos filed a Second Amended Complaint on October 26, 2023, Dkt. 66, and on March 29, 2024, both Ortega and Suarez moved to dismiss it for lack of personal jurisdiction, Dkts. 91, 95.

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a party to move to dismiss prior to filing an answer for lack of personal jurisdiction.  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (internal quotation marks omitted).  "[W]here jurisdictional discovery has been conducted—as here—a plaintiff's *prima facie* showing must be 'factually supported'; in other words, it must 'include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'"  *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 250 (S.D.N.Y. 2020) (alteration adopted) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)).  In this posture, "the court applies a standard akin to that on a motion for summary judgment, construing the pleadings documents, and other evidentiary materials in the light most favorable to the plaintiff and all doubts are resolved in its favor." *Arzu v. Am. Airlines, Inc.*, 690 F. Supp. 3d 242, 247 (S.D.N.Y. 2023) (alterations adopted and internal quotation marks omitted).  A court, however, need not "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept.*

---

[3] The Court also denied Villalobos's motion to proceed by pseudonym, *Telemundo Network Grp.*, 2023 WL 6259390, at *4-8; dismissed with prejudice her causes of action alleging sexual assault and battery, false imprisonment, and intentional infliction of emotional distress, *id.* at *11; and dismissed without prejudice her causes of action alleging violations of New York State's civil rights law and statutory protection for victims of gender-motivated violence, *id.* at *12.

*11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted); *see also Newton v. Meyer*, No. 22 Civ. 540 (JPC), 2023 WL 2563115, at *5 (S.D.N.Y. Mar. 17, 2023). Similarly, "the Court need not accept as true allegations controverted by the defendant's affidavits." *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 605 (S.D.N.Y. 2016).

### III. Discussion

Assessing this Court's personal jurisdiction over a defendant generally involves a two-step process. First, there must be a "statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). In evaluating this requirement, federal courts "look first to the long-arm statute of the forum state, in this instance, New York." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997); *see also Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2021 WL 1895033, at *5 (S.D.N.Y. May 11, 2021). Second, the Court must determine whether the exercise of personal jurisdiction comports with due process. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-74 (1985); *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). Parties can contractually consent to the Court's jurisdiction, however, essentially collapsing the two-part inquiry into one: "[i]t is well-settled that 'parties to a contract may agree in advance to submit to the jurisdiction of a given court' through forum-selection clauses." *Gen. Elec. Int'l, Inc. v. Thorco Shipping Am., Inc.*, No. 21 Civ. 6154 (JPC), 2022 WL 1748410, at *5 (S.D.N.Y. May 31, 2022) (first quoting *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964), then collecting cases); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."). "Where an agreement contains a valid and enforceable forum selection clause, . . . it is not necessary to analyze jurisdiction under New York's long-arm statute

6

or federal constitutional requirements of due process." *Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*, No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010).

Villalobos's argument for this Court's exercise of personal jurisdiction over Ortega and Suarez is based entirely on the forum-selection clause contained in the Participant Agreement—even though neither Ortega nor Suarez signed that Agreement. *See* Participant Agreement at 2, 58; *see generally* Opp. It is true that, "[i]n general, 'the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause.'" *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (quoting *Aguas Lenders Recovery Grp., LLC v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009)). Indeed, the Second Circuit has held that "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." *Id.* at 723.

Villalobos, however, asks the Court to adopt the inverse of this holding: that as a signatory, she should be able to enforce the contract and the attendant forum-selection clause against non-signatories Ortega and Suarez. The "Second Circuit has not reached the question of when a signatory may enforce a forum selection clause against a non-signatory." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 324 (S.D.N.Y. 2017). Although "a number of district court cases in this Circuit have embraced the 'closely related' standard in [such] cases," *id.* (collecting cases), a growing number of cases in this District have begun to question the blind application of this test to situations where a non-signatory objects to a signatory's enforcement of the forum-selection clause against him, *see, e.g.*, *Koh v. Koo*, No. 22 Civ. 6639 (JMF), 2023 WL 5352786, at *3 (S.D.N.Y. Aug. 21, 2023); *Clarke v. TRIGO U.S., Inc.*, No. 22 Civ. 1917 (PKC), 2023 WL 2456814, at *5-6 (S.D.N.Y. Mar. 10, 2023); *Beskrone v. Berlin*, 656 F. Supp. 3d 496,

7

513-15 (S.D.N.Y. 2023); *Mersen USA EP Corp. v. TDK Elecs. Inc.*, 594 F. Supp. 3d 570, 583-84 (S.D.N.Y. 2022); *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20 Civ. 967 (LJL), 2021 WL 918556, at *8-9 (S.D.N.Y. Mar. 10, 2021); *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 390-96 (S.D.N.Y. 2019).  The Honorable Jed S. Rakoff summarized the concerns in *Arcadia Biosciences*:

> The rules governing personal jurisdiction . . . are driven by constitutional concerns over the court's power to exercise control over the parties.  Although the personal jurisdiction inquiry is not mechanical, it is constrained in ways that the venue inquiry is not.  Most notably, a plaintiff must make a baseline showing that the defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  Regardless of the convenience to the parties or the private and public interests at stake, a court cannot exercise personal jurisdiction unless the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
>
> These constitutional requirements caution against a liberal application of forum selection clauses to non-signatory defendants. . . .  [T]he application of forum selection clauses to non-signatories has been justified by various policy benefits, including the contribution that such clauses have been praised for making to certainty in commercial transactions, the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, the promotion of vital interests of the justice system, including judicial economy and efficiency, and the guarantee that parties will not be required to defend lawsuits in far-flung fora.  But although these benefits may be salutary, a court cannot consider them without first determining whether the exercise of jurisdiction over the defendant comports with due process.

356 F. Supp. 3d at 394-95 (alterations adopted; internal quotation marks, citations, and footnote omitted).[4]

---

[4] Courts in this District are not alone in their skepticism.  *See, e.g.*, *M3 USA Corp. v. Qamoum*, Civ. A. No. 20-2903 (RDM), 2021 WL 2324753, at *12 (D.D.C. June 7, 2021) ("[I]f the 'closely related' doctrine turns on some form of true consent, . . . then that consent should presumably extend to substantive provisions of even those contracts without forum selection clauses.  And, if the concept of implied consent does not extend that far, the Court is left to wonder what is unique about a forum selection clause and how that difference can be reconciled with the Supreme Court's personal jurisdiction precedent and due process."); *Truinject Corp. v. Nestlé Skin*

Under the more critical view advanced by this latter series of cases, the "closely related" test alone cannot give rise to personal jurisdiction over a non-consenting non-signatory; rather, a non-consenting non-signatory may be bound by a forum-selection clause if it "is otherwise bound to the agreement, as for example under the ordinary law of successor liability and alter ego," and if subjecting the non-signatory to the court's personal jurisdiction would not offend "the state law and federal constitutional principles otherwise applicable." *HSM Holdings*, 2021 WL 918556, at *9; *see also id.* ("[T]he law is clear that, in the absence of consent, a court may exercise jurisdiction over an individual only after ensuring that exercise is consistent with the personal jurisdiction granted to the courts of the forum state by its legislature and consistent with federal due process principles."); *That's What She Said, Inc. v. Gutter Games Ltd.*, No. 22 Civ. 4230 (KPF), 2023 WL 3346508, at *6 (S.D.N.Y. May 9, 2023) ("[I]t is well settled that when a company is found to be a successor in interest to an entity over whom the court has personal jurisdiction, 'the court gains personal jurisdiction over the successor simply as a consequence of their status as a successor in interest, without regard to whether they had other minimum contacts with the state.'" (quoting *LiButti* v. *United States*, 178 F.3d 114, 123-24 (2d Cir. 1999))).

Villalobos does not argue that either Ortega or Suarez are bound by the Participant Agreement under ordinary principles of contract law. Nor could she. Under New York law, "it is axiomatic that a contract cannot bind a non-party unless the contract was signed by the party's

---

*Health, S.A.*, C.A. No. 19-592-LPS-JLH, 2019 WL 6828984, at *11 (D. Del. Dec. 13, 2019) (noting "serious questions about the constitutionality of using the 'closely related' test to exercise personal jurisdiction" and collecting cases from other districts that agree); *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 926 (N.D. Ill. 2017) ("While it may be *foreseeable* to a nonsignatory who knowingly allows itself to become embroiled in a dispute related to a contract with a forum selection clause that it is at risk of being sued in the contractually selected forum, the foreseeability of that risk does not mean the nonsignatory *intended to relinquish* its constitutional right to be free from suit except in a forum with which it has minimum contacts.").

9

agent, the contract was assigned to the party, or the signatory is in fact the 'alter ego' of the party." *Arcadia Biosciences*, 356 F. Supp. 3d at 390 (alteration adopted and internal quotation marks omitted). And in general, "[a] non-signatory to a contract may be bound to the terms of an agreement if the non-signatory is found to have manifested an intent to be bound by the contract." *Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 260 (S.D.N.Y. 2022) (internal quotation marks omitted). Villalobos has made no allegation that either she or Acun Medya acted as the agent of Ortega or Suarez when signing the Participant Agreement or that the contract was assigned to Ortega or Suarez. Nor has Villalobos alleged any facts that would support an inference of an intent by either Ortega or Suarez to be bound by the Participant Agreement. And the attenuated relationship between Ortega and Suarez on the one hand, and Acun Medya on the other, precludes any argument that the Individual Defendants and the corporation are alter egos of each other. Ortega and Suarez, in short, are not bound by the terms of the Participant Agreement.

Villalobos similarly does not argue that the Court's exercise of personal jurisdiction over Ortega and Suarez would comport with the limitations imposed by the Due Process Clause,[5] which "protects a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). This analysis "has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Id.* "With respect to minimum contacts, [a court] must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Chloé*, 616 F.3d at 164. Villalobos has alleged no connection between the

---

[5] Villalobos argues that the Individual Defendants "have waived any argument regarding constitutional due process" because they "never raised the issue in the original motion." This argument has no merit. Defendants' original motion argued that the exercise of personal jurisdiction over the Individual Defendants would violate the Due Process Clause. Dkt. 38 at 36-37.

Individual Defendants and New York. She has not alleged that either Ortega or Suarez are residents or citizens of the State of New York. *See* Ortega Decl. ¶¶ 2-3 (Ortega is a citizen and resident of Florida); Dkt. 39 (Suarez declaration filed in support of first motion to dismiss) ¶¶ 2-3 (Suarez is a citizen and resident of Florida). The Participant Agreement was signed by a non-U.S. company (Acun Medya), *see supra* n.2, and a Mexican resident (Villalobos), *see* SAC ¶ 3 ("Villalobos is an individual residing in Mexico City, Mexico."). The Show was filmed in the Dominican Republic, Ortega Decl. ¶ 4; Suarez Dep. Tr. at 32:10-18, and the alleged sexual assault that followed the filming occurred in Mexico, SAC ¶¶ 26-33. Villalobos suffered no injury in New York, nor does she have any other connection with the state; in fact, not a single factual allegation relates to New York. The only contact that the Individual Defendants have with the state is that they worked on the Show, and as part of Villalobos's appearance on the Show, Villalobos negotiated with a separate company, Acun Medya, that any dispute under the contract between her and that company would be litigated in New York. Such a tenuous connection cannot be the basis for the Court's exercise of personal jurisdiction.

Villalobos instead hangs her hat on the "closely related" test, arguing only that non-signatories Ortega and Suarez are subject to this Court's personal jurisdiction because they are closely related to signatory Acun Medya, and to the Show more generally. Opp. at 4-12. In situations in which an ordinary agency or contract law analysis does not already attribute the consent of a signatory to a non-signatory, the Court is skeptical that the "closely related" test can operate to extend the Court's personal jurisdiction over the non-signatory in question without regard to the limits imposed by state law or federal due process protections. But regardless, Villalobos's claims against Ortega and Suarez do not survive a "closely related" analysis.

At the very minimum, the "'constitutional requirements of personal jurisdiction caution against a liberal application of forum selection clauses to non-signatory defendants,' and such application is inappropriate where enforcement is not 'foreseeable by virtue of the relationship between the signatory and the non-signatory sought to be bound.'" *Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No. 19 Civ. 3444 (VSB), 2020 WL 5503557, at *5 (S.D.N.Y. Sept. 10, 2020) (alterations adopted) (quoting *Arcadia Biosciences*, 356 F. Supp. 3d at 395) (collecting cases); *accord Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18 Civ. 11386 (VSB), 2023 WL 4159358, at *7 (S.D.N.Y. June 2, 2023).  In applying the "closely related" test, the "key inquiry is whether enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *Telemundo Network Grp.*, 2023 WL 6259390, at *10 (alteration adopted and internal quotation marks omitted).  This is "a fairly strict standard," *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 523 (S.D.N.Y. 2018), *aff'd,* 774 F. App'x 714 (2d Cir. 2019), which Villalobos has not met.

With respect to Ortega, he played no role in the negotiation, drafting, or execution of the Participant Agreement; he had no knowledge that contestants were required to sign any such agreement prior to appearing on the Show; and in fact, he had not even seen a copy of the Participant Agreement until the commencement of this suit.  Ortega Decl. ¶¶ 16-18.  Villalobos cannot make the requisite showing of foreseeability without first showing Ortega's knowledge of the contract.  It is implausible, to say the least, that Ortega would foresee himself being subject to suit in New York solely because of a forum-selection clause that he did not know existed.

A similar analysis applies to whether Suarez could reasonably foresee the forum-selection clause being enforced against him.  Like Ortega, "Suarez did not have any role with regard to, and/or relationship to, the Participant Agreement.  He was not involved in any aspect of the

negotiation or execution of the Participant Agreement, and is not otherwise involved in that process in any way." Suarez Resps. at 6. In fact, when asked to "[i]dentify any role that . . . Suarez had in the drafting, negotiation, and/or execution of the Participant Agreement," Villalobos stated that she "ha[d] no responsive information." Dkt. 96, Exh. D (Villalobos's interrogatory responses) at 3. Suarez did not meet or otherwise interact with Villalobos until after she had signed the Participant Agreement and arrived in the Dominican Republic, and even then, his interaction with her was limited to a welcome meeting with all of the Show's participants. Suarez Resps. at 5; Suarez Dep. Tr. at 57:7-17. Villalobos argues only that Suarez should have foreseen being bound by the forum-selection clause because he was "actively involved in producing the Show" as an Executive Vice President of Primetime Realities and Specials for Telemundo. Opp. at 6-7. An individual's mere involvement in the subject matter of the contract is not alone enough to render that individual subject to a forum-selection clause contained within that contract—let alone enough to meet the "foreseeability" requirement of the "closely related" analysis. *See*, *e.g.*, *Italian Exhibition Grp. USA, Inc. v. Bartolozzi*, No. 23 Civ. 4417 (AS), 2023 WL 7301810, at *1 (S.D.N.Y. Nov. 6, 2023) (explaining that "even as an executive," there was nothing to suggest that the defendant's role in the company "would make it foreseeable that she would be personally bound by every contract that [the company] entered into"). Accordingly, even under a "closely related" analysis—which the Court doubts could constitutionally apply in this case—the Court would lack personal jurisdiction over either Ortega or Suarez.

13

## IV. Conclusion

For the foregoing reasons, Ortega's and Suarez's motions to dismiss for lack of personal jurisdiction are granted, and all claims against them are dismissed without prejudice to being reinstated in a forum that can exercise personal jurisdiction over them. The joint motion for oral argument, Dkt. 101, is denied as moot. The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 91, 95, and 101, and to terminate Rafael Ortega and Francisco Suarez as Defendants in this case.

SO ORDERED.

Dated: December 6, 2024
      New York, New York

                                      JOHN P. CRONAN
                                  United States District Judge