```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
OLIMPIA VILLALOBOS,                                                    :
                                                                       :
                          Plaintiff,                                   :
                                                                       :
            -v-                                                        :   22 Civ. 7665 (JPC)
                                                                       :
TELEMUNDO NETWORK GROUP LLC, et al.,                                   :   OPINION AND ORDER
                                                                       :
                          Defendants.                                  :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Plaintiff Olimpia Villalobos was a contestant on a Spanish-language reality television show called "Exatlón Estados Unidos" (the "Show"). The Show is produced by Telemundo Network Group, LLC ("Telemundo"), which is owned by NBCUniversal Media, LLC ("NBC"), which itself is owned by Comcast Holding Corporation ("Comcast"). In this action, Villalobos alleges that, after suffering an injury while filming the Show, she was confined in a hospital room and later raped by a producer of the Show. The Court previously dismissed two individuals who were named as Defendants for lack of personal jurisdiction, leaving Telemundo, NBC, and Comcast (collectively, the "Corporate Defendants") as the remaining Defendants. Villalobos asserts causes of action against the Corporate Defendants under the Trafficking Victims Protection Act ("TVPA"); for negligent hiring, supervision, and retention; for negligent infliction of emotional distress ("NIED"); and under the New York Adult Survivors Act ("ASA").

The Corporate Defendants move to dismiss Villalobos's claims against them under Federal Rule of Civil Procedure 12(b)(6). For reasons that follow, the Court grants the Corporate

Defendants' motion and dismisses with prejudice the claims against them in the Second Amended Complaint.

## I. Background

The Court assumes familiarity with the facts alleged in this case, which were described at length in the Court's Opinions of September 26, 2023, and December 6, 2024. *See Doe v. Telemundo Network Grp. LLC*, No. 22 Civ. 7665 (JPC), 2023 WL 6259390, at *1-3 (S.D.N.Y. Sept. 26, 2023); *Villalobos v. Telemundo Network Grp. LLC*, No. 22 Civ. 7665 (JPC), 2024 WL 5008980, at *1-3 (S.D.N.Y. Dec. 6, 2024). The facts and procedural history are summarized below only to the extent relevant to resolving the pending motion.[1]

Villalobos appeared as a contestant on Season 3 of the Show. SAC ¶ 3. The Show features two teams—one comprised of "celebrities and professional athletes," and another comprised of "ordinary people from all walks of life"—competing against each other in various physical and athletic challenges. *Id.* ¶¶ 19-20. It is produced by Telemundo. *Id.* ¶ 4. NBC is a parent company of Telemundo, and Comcast is a parent company of NBC. *Id.* ¶¶ 5-6.

At some point between August and September 2019, Villalobos was injured while filming the Show and "became gravely ill." *Id.* ¶ 22. She was taken to a hospital and placed in the intensive care unit. *Id.* At the hospital, the Corporate Defendants' "staff and producers . . . forbade [Villalobos] from calling her home and speaking to any friends or family about what was

---

[1] The facts herein are taken from the Second Amended Complaint, Dkt. 66 ("SAC"), and are assumed to be true for the purposes of this Opinion and Order. *See Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor"). The Court emphasizes that Villalobos's allegations about the conduct of the Corporate Defendants—as well as her allegation that Rafael Ortega raped her—are not facts that the Court has found to be true.

2

happening to her," "refused to allow her to leave,"[2] confiscated her cellphone, and did not allow her any visitors except for Rafael Ortega, a producer who would "frequently visit her for no apparent reason." *Id.* ¶¶ 22-23.  Ortega's visits made Villalobos "feel extremely uncomfortable and unsafe." *Id.* ¶ 23.  In the past, Ortega had "frequently exhibited predatory sexual behavior to show contestants and other women." *Id.* ¶ 37.

On December 28, 2019, after Villalobos was released from the hospital, Ortega invited her and two other contestants to a "business meeting" at the Hyatt Regency hotel in Guadalajara, Mexico. *Id.* ¶ 26.  The stated purpose of the meeting was to discuss the possibility of Villalobos returning for another season of the Show. *Id.*  After the meeting, Villalobos told Ortega that she planned to secure her own hotel room for the night, but Ortega "insisted she stay [in] his hotel room instead," promising that he would sleep on the floor or in another bed. *Id.* ¶ 30.  Villalobos acquiesced because "Ortega had decision-making power in the production of a show that she had potential to continue to be involved in," and she "understood that alienating him would result in her being disadvantaged or blacklisted from the [S]how." *Id.* ¶ 31.

After arriving at Ortega's hotel room, Villalobos fell asleep. *Id.* ¶ 32.  She awoke to Ortega lying on top of her "while touching her breasts and saying that 'he liked her very much' and that 'he would not do anything to her or disrespect her' as he was continuing to press himself on her and put the full weight of his body on hers." *Id.*  Villalobos resisted, but Ortega continued forcing himself on her against her will. *Id.* ¶ 33.  He then "proceeded to rape her." *Id.*

---

[2] In their moving brief, the Corporate Defendants allude to a possible inconsistency between Villalobos's allegations that she was "gravely ill" so as to require hospitalization in the intensive care unit, SAC ¶ 22, and that Defendants "confined" her to the hospital not allowing her to leave, *id.* ¶¶ 22-23.  *See* Dkt. 110 at 5.  Any inconsistency, however, is immaterial to the Court's resolution of the Corporate Defendants' motion.

Ortega later convinced Villalobos to not report the rape by "guarantee[ing] that she would be on the next season of the [S]how"—a promise that was not honored. *Id.* ¶¶ 37, 41. Villalobos also relented because the Corporate Defendants had previously "turn[ed] a blind eye to these types of accusations and . . . Ortega's sexual misconduct." *Id.* ¶ 36.

Villalobos initiated this action on August 17, 2022, in the Supreme Court of the State of New York, New York County. Dkt. 1 (Notice of Removal) ¶¶ 1-2. She filed an Amended Complaint on September 7, 2022, to correct a misspelling of a party's name. *Id.* ¶ 2; Dkt. 1, Exh. A. The Amended Complaint brought causes of action against the Corporate Defendants, Ortega, and Francisco Suarez, another producer on the Show. Dkt. 1, Exh. A.

The case was removed to federal court in this District on September 8, 2022, Dkt. 1, and all Defendants moved to dismiss the Amended Complaint on December 9, 2022, Dkts. 37, 38. The Court granted that motion in part and denied it in part. *Telemundo Network Grp.*, 2023 WL 6259390, at *13. On October 26, 2023, Villalobos filed the Second Amended Complaint, asserting causes of action (1) under the TVPA, 18 U.S.C. §§ 1591 *et seq.*, SAC ¶¶ 43-61 (First and Second Causes of Action); (2) for negligent hiring, supervision, and retention, *id.* ¶¶ 62-78 (Third Cause of Action); (3) for NIED (Fourth Cause of Action), *id.* ¶¶ 79-87; and (4) under the ASA, N.Y. C.P.L.R. § 214-j, SAC ¶¶ 88-94 (Fifth Cause of Action).

Ortega and Suarez moved to dismiss the Second Amended Complaint for lack of personal jurisdiction on March 29, 2024. Dkts. 91, 95. On December 6, 2024, the Court granted their motions and dismissed the claims against those Defendants without prejudice to reinstating in a forum that can exercise personal jurisdiction over them. *Telemundo Network Grp.*, 2024 WL 5008980, at *7.

On January 6, 2025, the Corporate Defendants moved to dismiss Villalobos's remaining claims against them—her Second, Third, Fourth, and Fifth Causes of Action—under Federal Rule of Civil Procedure 12(b)(6). Dkts. 109, 110. Villalobos opposed that motion on February 3, 2025, Dkt. 111 ("Opposition"), and the Corporate Defendants replied on February 17, 2025, Dkt. 112.

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III. Discussion

### A.   Trafficking Victims Protection Act

Villalobos's Second Cause of Action is brought against the Corporate Defendants under the TVPA, which "imposes liability for offenses related to human trafficking." *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 638 (2021). The statute has criminal liability provisions in Section 1591 and civil liability provisions in Section 1595. Section 1591(a)(1) of the TVPA establishes criminal penalties for whoever "knowingly . . . recruits, entices, harbors, transports, provides, obtains,

advertises, maintains, patronizes, or solicits" a person so that "force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act." Section 1591(a)(2) establishes criminal penalties for whoever "knowingly . . . benefits . . . from participation in a venture which has engaged in an act described in violation of [Section 1591(a)(1)]." And Section 1595(a) provides that an "individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits . . . from participation in a venture which [it] knew or should have known has engaged in an act in violation of this chapter)."[3]

Villalobos proceeds under a "beneficiary theory" of TVPA civil liability, arguing that the Corporate Defendants participated in and benefitted from a sex-trafficking venture. Opposition at 3-7. This argument consists of three logical steps. First, Villalobos claims that Ortega forcibly solicited her to engage in a commercial sex act when he raped her in his hotel room in Guadalajara, Mexico. *Id.* at 4. Second, Villalobos contends that this occurred while Ortega was a producer on the Show, so the Show was a "venture" engaged in sex trafficking. *Id.* at 4-5. Finally, Villalobos argues that the Corporate Defendants benefitted from their participation in that venture due to the Show's financial success. *Id.*

Ultimately, Villalobos fails to state a cause of action under the TVPA because she has not pleaded facts showing that the Corporate Defendants should have known that the Show was a venture engaged in sex trafficking.[4] Although Villalobos alleges that there was "a general culture

---

[3] Villalobos purports to bring her TVPA claim against the Corporate Defendants as a "[v]iolation of 18 U.S.C. § 1591." SAC at 12. Because Section 1591 establishes criminal penalties, the Court assumes that Villalobos actually means to invoke the TVPA's civil liability provision under 18 U.S.C. § 1595.

[4] Courts have split views on what awareness a sex-trafficking beneficiary must have to be liable under the TVPA. First, some courts have required the defendant to have known that its

of sexual misconduct and indifference to the same among [the Corporate] Defendants and their producers," SAC ¶ 37, such a culture would not necessarily have put the Corporate Defendants on notice about the specific fact that Ortega—or any of the Show's other producers—were recruiting contestants in order to use "force, threats of force, fraud, [or] coercion . . . to cause [them] to engage in a commercial sex act," 18 U.S.C. § 1591(a).

Similarly, the Second Amended Complaint generally avers that there was a "pattern and practice of sexist conduct among [the Corporate] Defendants that included turning a blind eye to these types of accusations," SAC ¶ 36, but this unspecified allegation of past indifference to sexual misconduct comes far short of suggesting that the Corporate Defendants should have been aware that *sex trafficking* was occurring. *See Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 339 (S.D.N.Y. 2025) ("[T]he [Trafficking Victims Protection Reauthorization Act ('TVPRA')] requires the beneficiary to know its client is engaged in trafficking, not just in any illegal activity."); *S.J.*, 473 F. Supp. 3d at 154 ("[A] plaintiff must show, at least, that a [defendant] was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA."). In that regard, this case resembles *Noble v. Weinstein*, where the court dismissed

---

venture was engaged in sex trafficking, whereas other courts have required only that the defendant should have known of the sex trafficking. *Compare S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 153 (E.D.N.Y. 2020) ("[A] person may be held liable if he *should have known* that he was facilitating a sex trafficking venture."), *with Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 405 (S.D.N.Y. 2023) ("[T]he defendant must have known (or recklessly disregarded) that force, fraud, or coercion would be used in the sex-trafficking venture."). Second, some courts have required a showing that the defendant was aware of the *particular* sex trafficking that injured the plaintiff, whereas other courts have not demanded that level of specificity. *Compare Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-CV-00619-PAB-SKC, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) (requiring that the defendant "should have known about *plaintiff's* sex trafficking at its hotels" (emphasis added)), *with Doe 1*, 671 F. Supp. 3d at 406 (not requiring awareness "that force, fraud, or coercion was used with respect to the plaintiff herself"). Here, because Villalobos has not pleaded facts showing that the Corporate Defendants should have known about any sex-trafficking activity, the Court need not take a position on these open doctrinal questions.

7

TVPA claims against one of the defendants because the complaint failed to show his awareness of sex trafficking despite alleging that he "paid for prior settlements of claims made by women" against an alleged sex-trafficking perpetrator.  335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (internal quotation marks omitted).  Here too, the allegation of the Corporate Defendants' general awareness of sexual misconduct by Ortega is insufficient to establish the more specific awareness of sex trafficking that is required for a TVPA violation.

Cases where a plaintiff has sufficiently pleaded a defendant's awareness of sex trafficking under the TVPA generally have involved allegations of warning signs of sex trafficking in particular.  For example, in *Doe 1 v. Deutsche Bank Aktiengesellschaft*, the plaintiffs alleged that a defendant, JP Morgan Chase Bank, was not only "aware of [Jeffrey] Epstein's convictions for sex crimes," but also "ignored numerous red flags associated with Epstein's accounts, which all suggested that [he] operated a sex-trafficking venture."  671 F. Supp. 3d at 407.  This included allegations that Epstein made multiple large and suspicious payments, such as "$29,464.66 to three young women, including two people known to be [his] victims."  *Id.* at 398; *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 555 (7th Cir. 2023) (finding sufficient awareness of sex trafficking when the defendant was in business with Backpage, a company "publicly identified . . . as the biggest and most notorious sex trafficking and pimping website in the United States" (internal quotation marks omitted)).  By contrast, Villalobos's Second Amended Complaint does not identify any "red flags" which might have tipped off the Corporate Defendants about sex trafficking, as opposed to general sexual misconduct by Ortega.

As such, Villalobos's claim against the Corporate Defendants under the TVPA in the Second Cause of Action is dismissed with prejudice.

8

B.     **Negligent Hiring, Supervision, and Retention**

In her Third Cause of Action, Villalobos contends that because the Corporate Defendants "knew or should have known of [Ortega's] propensity, pattern, and practice of sexual harassment, misconduct, and/or violence," SAC ¶ 64, they "acted unreasonably in retaining him as an employee at all relevant times," *id.* ¶ 66. To state such a claim for negligent hiring, supervision, and retention, "in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation marks and citations omitted).

Villalobos's negligent hiring, supervision, and retention claim fails because she has not alleged facts showing that "the tort was committed on the employer's premises or with the employer's chattels." *Id.*[5] Although Ortega first met Villalobos while she was a contestant on the Show, "the conduct complained of" occurred months later, when she was no longer on the Corporate Defendants' premises. *See Haybeck v. Prodigy Servs. Co.*, 944 F. Supp. 326, 332 (S.D.N.Y. 1996) (dismissing negligent hiring and retention claim even though the employee-tortfeasor had met the plaintiff in the employer-defendant's online chat room). Villalobos alleges that she was injured when Ortega and other employees isolated her in a hospital and when Ortega later raped her in a Guadalajara hotel room—two locations not "linked in any way" to the Corporate Defendants. *A.B. v. Staropoli*, 929 F. Supp. 2d 266, 289 (S.D.N.Y. 2013).

---

[5] Given this conclusion, the Court does not reach whether the Second Amended Complaint adequately pleads the other elements of a negligent hiring, supervision, and retention claim.

Villalobos argues that because the Corporate Defendants paid for Ortega's hotel room, that room was the functional equivalent of the Corporate Defendants' chattel.  Opposition at 12.  But this argument misunderstands the theory behind a negligent hiring, supervision, and retention claim.  The reason an employer may ordinarily be liable for acts committed with its chattels is because entrusting an employee with instrumentalities that they are not qualified to handle is akin to "initiating conduct having an undue tendency to cause harm."  Restatement (Second) of Agency § 213 cmt. d; *see, e.g.*, *Gonzalez v. City of New York*, 17 N.Y.S. 3d 12, 17 (1st Dep't 2015) (finding negligent hiring, retention, and supervision adequately pleaded when a municipal employer allowed a police officer "to retain his [city-issued] weapon and ammunition after it allegedly learned of his dangerous propensities").  In other words, the "employer's negligence lies in his having placed the employee in a position to cause foreseeable harm."  *Detone v. Bullit Courier Serv., Inc.*, 528 N.Y.S. 2d 575, 576 (1st Dep't 1988).

Here, the Corporate Defendants' alleged payment of a hotel room did not entrust Ortega with an instrumentality that had an undue tendency to cause foreseeable harm.  Although the hotel room allegedly was the location where Ortega raped Villalobos, Ortega would have posed an equal danger if he had rented that room himself.  *See Doe 7015 v. Elektra Ent. Grp.*, No. 21 Civ. 6868 (JPC), 2023 WL 2744102, at *7 (S.D.N.Y. Mar. 31, 2023) (dismissing negligent hiring, supervision, and retention claim because the assailant "was in a position to commit his tortious conduct well before he became the Moving Defendants' independent contractor, and . . . their selecting him for that role did not place him in the position to cause the injury [the plaintiff] alleges she suffered").  In other words, that the Corporate Defendants may have given Ortega this particular "chattel" was not the reason that he allegedly raped Villalobos.  *Cf. Waterbury v. New*

10

*York City Ballet, Inc.*, 168 N.Y.S. 3d 417, 424 (1st Dep't 2022) ("[T]he employer's negligence must be a proximate cause of the plaintiff's injury.").

For precisely this reason, courts have held that an employer's payment of an employee's hotel room did not render the employer liable for sexual assault committed by the employee in that room. For example, in *Doe v. Alsaud*, the plaintiff did not state a claim of injury occurring with the employer's "chattels" even though she alleged that the employer paid for the room where she was assaulted and had also assigned an employee to "regulat[e] the temperature on [that] floor." 12 F. Supp. 3d 674, 684 (S.D.N.Y. 2014); *see also Canosa v. Ziff*, No. 18 Civ. 4115 (PAE), 2019 WL 498865, at *16 (S.D.N.Y. Jan. 28, 2019) ("Even assuming the hotel rooms in which the assaults on Canosa took place were paid for by TWC for use in connection with TWC projects, the third element of the tort of negligent supervision would not be satisfied.").

The Corporate Defendants also cannot be liable merely for allowing Ortega to occupy a position of power and influence, which, in turn, might have persuaded Villalobos to accept Ortega's offer to stay the night at the hotel. *See* Opposition at 13. If that theory were to suffice, employers would be liable for all acts their high-ranking employees might foreseeably commit— no matter where and when those acts occur. Such an approach would radically expand employer liability, contrary to the rule that a "principal's duty is to adequately instruct and supervise its [employee] when he is performing work under the principal's direction, not in every facet of his life." *Doe 7015*, 2023 WL 2744102, at *6.

Accordingly, Villalobos's Third Cause of Action alleging negligent hiring, supervision, and retention against the Corporate Defendants is dismissed with prejudice.

C.     **Negligent Infliction of Emotional Distress**

"Under New York law, a plaintiff alleging NIED must show '(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress.'" *Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020) (quoting *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015)). Here, Villalobos's NIED claim against the Corporate Defendants arises out of two alleged incidents—Ortega's rape of Villalobos and the actions of Ortega and other employees to confine Villalobos in the hospital.

Both bases for Villalobos's NIED claim relate to the conduct of the Corporate Defendants' employees, as opposed to the Corporate Defendants themselves. But under New York law, "an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." *N.X. v. Cabrini Med. Ctr.*, 765 N.E.2d 844, 847 (N.Y. 2002).

Villalobos's allegations do not show that the Corporate Defendants' employees were acting in furtherance of the Corporate Defendants' business and within the scope of their employment when they injured her. With regard to Ortega's alleged rape, "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998). For example, in *N.X. v. Cabrini Medical Center*, the New York Court of Appeals held that a "sexual assault perpetrated by a hospital employee is not in furtherance of hospital business and is a clear departure from the scope of employment, having been committed for wholly personal motives." 765 N.E.2d at 847; *see also Judith M. v. Sisters of Charity Hosp.*, 715 N.E.2d 95, 96 (N.Y. 1999) ("Assuming plaintiff's allegations of sexual abuse are true, it is clear that the employee here departed from his duties for

solely personal motives."). The same is true here. As Villalobos concedes in the Second Amended Complaint, "Ortega's sexual assaults were committed outside of the scope and course of employment because he was not employed to sexually assault contestants and individuals appearing on the shows he produces." SAC ¶ 72.

The alleged confinement of Ortega in the hospital also cannot be attributed to the Corporate Defendants. As a general matter, "intentional tort situations have been found to fall within the scope of employment" only when the employee's commission of such an intentional act "may have been reasonably expected." *Riviello v. Waldron*, 391 N.E.2d 1278, 1282 (N.Y. 1979); *see also Rivera v. New York*, 142 N.E.3d 641, 646 (N.Y. 2019) ("[I]n cases involving a use of force, whether an employee is acting within the scope of employment requires consideration of whether the employee was authorized to use force to effectuate the goals and duties of the employment."). For example, one might reasonably foresee the assault of an unruly patron by a bartender, *see Sims v. Bergamo*, 147 N.E.2d 1, 3 (N.Y. 1957), or the assault of a tenant by a superintendent enforcing building occupancy rules, *see De Wald v. Seidenberg*, 79 N.E.2d 430, 432 (N.Y. 1948).

By contrast, the Corporate Defendants could not have foreseen that their employees—producers and other staff of a reality television show—would confiscate a contestant's cellphone, prevent her from leaving a hospital, and not allow her any visitors. It is unclear what motivated this alleged conduct, but the Second Amended Complaint provides no basis to infer that it was done in service of the Corporate Defendants. *See Riviello*, 391 N.E.2d at 1281 ("[T]he test has come to be 'whether the act was done while the servant was doing his master's work.'" (quoting *Jones v. Weigand*, 119 N.Y.S. 441, 443 (2d. Dep't 1909))). Indeed, Villalobos does not point to any other instances when similar conduct occurred or explain how this conduct might have benefitted the Corporate Defendants in any way.

As such, there is no plausible inference that Villalobos suffered injury due to actions taken by the Corporate Defendants' employees in furtherance of the Corporate Defendants' business and within the scope of their employment. The Fourth Cause of Action for NIED against the Corporate Defendants therefore is dismissed with prejudice.

**D.    New York's Adult Survivor Act**

Lastly, Villalobos purports to plead a claim under the ASA. SAC ¶¶ 88-94. But the ASA does not create an independent cause of action. Rather, the statute "provides for a one-year 'look back' window for adult survivors of sexual assault whose claims otherwise fall outside of the statute of limitations." *Heath v. Galloway*, No. 23 Civ. 10886 (LTS), 2024 WL 2978475, at *3 (S.D.N.Y. June 10, 2024).[6] Accordingly, the Court dismisses with prejudice Villalobos's claim against the Corporate Defendants under the Fifth Cause of Action.

## IV.    Conclusion

For the foregoing reasons, the Corporate Defendants' motion to dismiss is granted. Villalobos's claims against Telemundo Network Group, LLC; NBCUniversal Media, LLC; and Comcast Holding Corporation are dismissed with prejudice. Because Villalobos's claims against Rafael Ortega and Francisco Suarez previously were dismissed without prejudice for lack of personal jurisdiction, the instant ruling resolves all pending claims. Villalobos has not requested leave to further amend or explained how she would seek to cure the deficiencies identified in her Second Amended Complaint. The Court thus does not *sua sponte* grant leave to amend. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [for leave to amend] that was not made."); *see also Newton v. Meyer*, No.

---

[6] None of the claims in the Second Amended Complaint is time-barred, so the ASA's "look-back window" has no pertinence here.

14

22 Civ. 540 (JPC), 2023 WL 2563115, at *14 (S.D.N.Y. Mar. 17, 2023) (denying leave to amend when the plaintiff had already amended his claims multiple times).

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated: September 19, 2025
New York, New York

_____
JOHN P. CRONAN
United States District Judge